McCOUBREY, Adm'r, v. PURE OIL CO.

No. 27301.　Feb. 16, 1937.

McCoy, Craig & Pearson, for plaintiff in error.

Humphrey & Spence, for defendant in error.

WELCH, J.　The parties appear here in the same order in which they appeared in the trial court and will be referred to as plaintiff and defendant.

In July, 1934, Roy Sebourn, a resident of

Texas, was killed while in the employ of the defendant at a gasoline plant owned and operated by the defendant in the state of Texas. He left surviving him a widow and minor son as his sole heirs at law, who are also residents of the state of Texas.

In January, 1936, the widow filed her petition in the county court of Osage county, Okla., seeking the appointment of E. R. Mc-Coubrey as administrator of the estate of her deceased husband, alleging therein that the deceased was a resident of the state of Texas at the time of his death, and that he left estate in Osage county, Okla., the general character and probable value being "A cause of action for wrongful death of said decedent against the Pure Oil Company, a corporation, doing business in the state of Oklahoma and having property in Osage county, Okla., value unknown." It was not alleged that the deceased owned any other property of whatsoever character at any place. Pursuant to such application the county court of Osage county appointed Mc-Coubrey as administrator. The defendant is a corporation organized under the laws of the state of Ohio, and the plaintiff administrator is a citizen of the state of Ohio.

Thereafter plaintiff instituted a suit in the district court of Osage county, Okla., against the defendant in which he alleged his appointment and qualification as such administrator; that the defendant is an Ohio corporation engaged in operating an oil refinery and gasoline plant in the county of Van Zandt, in the state of Texas, and having property in Osage county, Okla.: he alleged the decedent's death while a resident of the state of Texas, and that the widow and minor son were the sole heirs at law: that the decedent's death resulted from injuries which were the direct and proximate result of the willful act or omission or gross negligence of defendant. He alleged that by reason of such facts there accrued to him under the laws of the state of Texas a cause of action against the defendant for exemplary damages. It is alleged further in the petition that the decedent's employment was within the terms and provisions of the Texas Workmen's Compensation Law, and that plaintiff was entitled to judgment against the defendant for exemplary damages (although not being entitled to recover actual damages) upon proof that actual damages had been sustained. He specifically pleaded the Texas statutes as a basis for his cause of action and his authority to maintain the same for exemplary damages.

He alleged that he was entitled to $25,-000 exemplary damages for the decedent's widow, and $25,000 exemplary damages for decedent's minor son.

After the filing of such petition in the district court, and after service of summons upon defendant in Osage county, in such action, said defendant filed its motion in the county court to set aside and vacate the letters of administration so issued. Upon hearing had, the motion was overruled and an appeal taken to the district court of Osage county.

The defendant demurred to plaintiff's petition filed in the district court action upon the following grounds:

"1. That the court had no jurisdiction of the subject of the action.

"2. That plaintiff has no legal capacity to sue.

"3. That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant."

By stipulation of the parties the defendant's demurrer to the petition and the cause on appeal from the county court were consolidated by order of the trial court, both for the purpose of hearing and determination in that court, and for the purpose of appeal to this court. Upon hearing had, the district court sustained the demurrer and also reversed the county court and ordered the letters of administration vacated, from which action the plaintiff presents this appeal.

The question of the right of the county court to appoint an administrator and the questions presented by the court's action in sustaining the demurrer to the petition filed in the district court both ultimately involve the right of plaintiff to maintain the action for damages in Osage county against the defendant, and we do not endeavor to keep the several questions presented entirely separate and apart.

A helpful statement of many of the principles of law involved is found in 23 C. J. 1009, para. 32. Without intention of approving or disapproving all of the principles therein contained, but for the sake of continuity, we quote the section in full as follows:

"In view of the fact that a cause of action for the wrongful death of a decedent is sometimes, although usually not, an asset of his estate, and of the very general requirement that such an action shall be brought by the executor or administrator of the decedent, the existence of such a

cause of action is usually regarded as a sufficient basis for a grant of administration in the jurisdiction where such cause of action arose, or where it may be enforced, even though the decedent was a nonresident and left no other assets in the jurisdiction. This view has been maintained notwithstanding a contention that the cause of action did not accrue in the decedent's lifetime, that, under the statute, no right of action arose in behalf of anyone until after an administrator had been appointed, or that the administration should properly be in the state of the decedent's residence. There is, however, authority for the view that administration on the estate of a nonresident cannot be granted in the jurisdiction where the occurrence causing his death took place, merely for the purpose of qualifying a representative to bring an action for such death, where the decedent left no property in the jurisdiction, and it is clear that such a claim will not warrant administration in one state where the decedent was a resident of another state in which the death and the negligence causing the same occurred and under the statutes of which the right of action arose."

We observe from the text and the supporting authorities there cited that the weight of modern authorities appears to support the doctrine that a statutory cause of action for wrongful death will generally support the appointment of an administrator of the decedent's estate, though there be no assets subject to the payment of debts and though there is no other property. We observe further therefrom that the grant of administration is quite generally upheld in the jurisdiction where the cause of action arose (see footnotes 38, in the text). We observe also that many courts have held in proper cases that the grant of administration will be upheld in the jurisdiction where the cause of action may be enforced. We note the above conclusions of the various courts as enlightening on the general subject before us, but it is our view that the specific questions generally considered therein are not entirely in point with what we consider the controlling and determining question here.

Few, if any, of the cases may be said to support the grant of administration in the jurisdiction where the decedent did not reside, owned no other property, and where the cause of action did not arise and where a consideration of comity did not impel the courts of that jurisdiction to enforce the claim or cause.

We consider the last portion of the quoted text as a substantially correct statement of the controlling principle of law here, wherein it is said as follows:

"* * * and it is clear that such a claim will not warrant administration in one state where the decedent was a resident of another state in which the death and the negligence causing the same occurred and under the statutes of which the right of action arose."

We would add thereto, however, the following: And where the courts of the jurisdiction in which administration is sought are not impelled by the comity rule to enforce the cause.

If the alleged cause of action declared upon by plaintiff in this case is not such as to command the exercise of jurisdiction by the courts of this state, it would then be apparent that the grant of administration in this jurisdiction would not be upheld when properly attacked, for the reason that such appointment could serve no useful purpose and the considerations mentioned as supporting the grant of administration would not be present.

We pass then to the question of whether or not the courts of this state will take jurisdiction of the plaintiff's alleged cause of action under the facts and circumstances shown here. In 15 C. J. 778, para. 74, it is said:

"Although the statutes of one state have no force or effect in another state, courts of justice in one state will, out of comity, assume jurisdiction of causes of action which are transitory in their nature, given by and arising under the statutes of a foreign state, where by so doing they will not violate their own laws or inflict injury on their own citizens."

And on page 780 of the same text, para. 74:

"The extent to which the laws of one state or nation are allowed to operate and to which they will be enforced in another depends upon comity, the extent and scope of which will be determined by each particular sovereignty, and which does not require a court to enforce rights under the statutes of another state to the prejudice of its own citizens, or when complete justice cannot be done."

That the courts of this state will exercise jurisdiction of transitory causes of action arising under the laws of a sister state in proper cases is the general rule. This court has so held. See Chicago, R. I. & P. Ry. Co. v. McIntire, 29 Okla. 797, 119 P. 1008. The question is largely one of venue and the conclusion that the venue of the action lies in this state is, in the absence of statutory requirements, governed by the rules of comity between the states and nations, and is builded upon the rules of the common law.

The alleged cause of action here is founded upon the laws of the state of Texas, and we are directed to a consideration of the common law upon the subject, and are not governed by any specific statute of this state, nor by a controlling congressional act applying alike to all of the states, as appears in the case of Rivera v. Atkinson, etc., R. Co. (Tex. Civ. App.) 149 S. W. 223.

An interesting discussion of the evolution of the venue laws may be found under the title of Venue, 67 C. J.

In a consideration of the question of venue as between different states, it would appear that same relates to the question of jurisdiction over the subject-matter of the action. Ellenwood, Adm'r, v. Marietta Chair Company, 39 L. Ed. (U. S.) 913. In the early stages of the development of the common law on the subject it appears that it was generally sought to lay the venue of the action at the place where the cause arose, this being based apparently upon the reason that the trial might be there had most conveniently by reason of easy availability of the jurors and witnesses. The scope of the venue was widened in cases where it obviously became necessary, in order to accomplish justice and to provide a forum for the orderly disposition and settlement of the rights of the parties. A distinction has arisen between actions in rem and actions in personam—between transitory actions and actions strictly local. It became necessary to consider certain actions as transitory, that is to say, they would follow the person, and as to actions in personam generally, when it developed that the local court could not obtain jurisdiction of the person of the defendant, the action was then considered to be transitory, otherwise plaintiff would in such case be without a remedy. It is thus seen that the term "transitory action" was generally applied as affecting defendants, usually persons, without a fixed or stable location and therefore not readily amenable to service of process. And so we think it apparent that the venue was extended primarily for the reason of affording the plaintiff a forum from and through which he might obtain process upon the defendant. This same extension of the venue has been generally recognized through the comity rule between various states. Although most of the states have followed the general rule, including our own, we find that a great many of the courts have, in the exercise of a sound discretion, refused to extend the privileges of their courts to enforce a cause of action arising under the laws of another state, where it affirmatively appears that the plaintiff had full recourse under the laws of his own state, and under the laws which support his cause of action, where it is apparent that the defendant was as readily, conveniently, and effectively subject to the process of the courts of the state wherein the cause arose and in the absence of special circumstances. Notable among the decisions to that effect are: Collard v. Beach, 81 N. Y. Supp. 619; Ferguson et al. v. Neilson, 11 N. Y. Supp. 524; Burdick v. Sylvanus D. Freeman, 46 Hun. 138; Mexican National Ry. Co. v. Jackson, 89 Tex. 107, 33 S. W. 857.

A general discussion of the principals of the law and the authorities supporting the same is to be found in Wertheim v. Clergue, 65 N. Y. Supp. 750.

In Collard v. Beach, supra, the Supreme Court of New York said:

"But the action of the court below in ordering a new trial leaves this case in a situation which renders it necessary for us to consider a subject which has become one of grave importance. The plaintiff here was a nonresident of this state, as was also the defendant; the occurrence giving rise to the action happened without the state; and the wrong, if any were done, was committed in the state in which both parties resided. The habit of importing such litigations as this into this jurisdiction, consuming the time of the courts, and requiring the people of the state of New York to bear the burden and expense of trying actions which ought to have been brought in other jurisdictions, where the home courts of litigants are open to afford adequate remedies, has become a great abuse and a just subject of complaint and protest. If it is to be encouraged, as was said in Hoes v. N. Y. N. H. & H. R. R. Co., 173 N. Y. 441, 66 N. E. 119, the flood gates of litigation in similar cases will be wide open, 'if not to establish a new legal industry, at all events to impose upon our already overworked courts the obligation to try actions imported from foreign jurisdictions.' Of course, as against foreign corporations, the action would not be entertained, for want of jurisdiction. In the case cited, the Court of Appeals strongly reprobated a device by which it was sought to acquire jurisdiction over the foreign corporation in an action of tort, but the remarks quoted apply with equal force to the whole class of actions of the same character, whether brought against corporations or natural persons.

"There is no doubt that this court has jurisdiction of an action of this character between non-resident individuals, where the wrong or trespass is committed in another jurisdiction, but we decline jurisdiction in actions of this character, even between natu-

ral persons. We have acted upon the rule declared in Ferguson v. Neilson, 11 N. Y. Supp. 524. In Wertheim v. Clergue, 53 App. Div. 124, 65 N. Y. Supp. 750, the cases are cited and commented upon, and from those cases we concluded that there is a fully established rule that the courts of this state, in the exercise of a sound judicial discretion, will decline jurisdiction between foreigners or nonresidents founded upon personal injuries or purely personal wrongs, unless special circumstances are shown to exist which require the retention of jurisdiction."

We note that this case and others deny plaintiff's right to sue in the courts of New York, even as against an individual or "natural person" defendant. And although we do not here expressly hold that we would apply the same rule as against an individual or natural person defendant (not expressing an opinion thereon), the case is approved as supporting the principle upon which our conclusion is herein based.

It appears that by statute in New York a nonresident may not sue a foreign corporation upon a cause of action arising outside the state. Such statutes would appear to be a legislative adoption of the theory of the law which we are discussing. See Hoes v. N. Y. N. H. & H. R. R. Co., 173 N. Y. 435, and others of the cited New York cases. It is thus seen that although New York has adopted the general rule of comity, just as this court has done in the McIntire Case, supra (see footnotes 53, C. J. 778), it, at the same time, refuses the use of its courts where it affirmatively appears that the plaintiff has an adequate resort to the courts of the state where the cause of action arose.

The Jackson Case, supra, by the Supreme Court of Texas, contains a clear statement of the controlling principles of law here. It is held in paragraph 2 of the syllabus:

"An action for damages for personal injuries is transitory, and may be maintained in any place where the defendant may be found, unless there be reason why the court whose jurisdiction is invoked should not act in the matter."

And in paragraph 5 of the syllabus:

"Comity would seem to forbid the courts of Texas assuming to determine the burdens upon a great national highway of a neighboring country; besides, the crowded condition of the dockets of the courts of the state, from domestic litigation, dissuades from assuming the burden of adjusting contests against the foreign road while adequate local remedies exist and are accessible to the injured parties."

It is true that in that case plaintiff was denied resort to the courts of Texas upon the additional grounds that the laws of Mexico were materially different from the laws of Texas. We are not inclined to feel, however, that such consideration materially detracts from the other reasons assigned as supporting the court's conclusion, and which are in accord with our views here. In the body of the opinion the court says:

"* * * This is a transitory action and may be maintained in any place where the defendant is found, if there be no reason why the court whose jurisdiction is invoked should not entertain the action. The plaintiff, however, has no legal right to have his redress in our courts; nor is it specially a question of comity between this state and the government of Mexico, but one for the courts of this state to decide, as to whether or not the law, by which the right claimed must be determined, is such that we can properly and intelligently administer it, with due regard to the rights of the parties. (Gardner v. Thomas, 14 Johns. 134, Johnson v. Dalton, 1 Cow. 543.)"

And again:

"There are other sufficient reasons why our courts should not attempt to enforce the Mexican law in cases like this. The reason which influences the courts of one state to permit transitory actions for torts to be maintained therein, when the right accrued in a foreign state or country, is that the defendant, having removed from such other state or country, cannot be subjected to the jurisdiction of the courts where the cause of action arose, and, as a matter of comity, but more especially to promote justice, the courts of the place where he is found will enforce the rights of the injured party against him, because it would be unjust that the wrongdoer should be permitted, by removing from the country where he inflicted the injury, to avoid reparation for the wrong done by him. In this case there has been no removal of the person or property of the defendant. Its railroad remains, as it was at the time of the injury, within the jurisdiction of the courts of Mexico, and it is liable to suit there according to the laws of that country. The reason for permitting the action to be prosecuted in our courts does not obtain in this case; the plaintiff has voluntarily resorted to the jurisdiction of our courts when his rights could be better adjudicated in Mexico."

"Justice does not demand the exercise of the jurisdiction, and comity between the governments of this state and Mexico would seem to forbid that we should do so. (Gardner v. Thomas, 14 Johns. 134; Johnson v. Dalton, 1 Cow. 543.)"

"There are at this time two systems of railroads extending from the borders of this state into Mexico for several hundred miles

each, and as that country shall hereafter develop, and commerce between the two countries become more extended, we may expect other lines to be constructed in the same direction. If our courts assume to adjust the rights of parties against those railroads growing out of such facts, as in this case, we will offer an invitation to all such persons, who might prefer to resort to tribunals in which the rules of procedure are more certainly fixed and the trial by jury secured, to seek the courts of this state to enforce their claims. Thus we would add to the already overburdened condition of our dockets in all the courts, and thereby make the settlement of rights originating outside the state, under the laws of a different government, a charge upon our own people. If the facts showed that this was necessary in order to secure justice, and the laws were such as we could properly enforce, this consideration would have but little weight, but we feel that it is entitled to be considered where the plaintiff chooses this jurisdiction as a matter of convenience and not of necessity."

Other courts under various decisions would appear to adopt the same principle of law which underlies the holding in paragraph 2 of the syllabus in the Jackson Case, supra, in considering questions relating to the grant of administration. Among these are to be found Cooper, Adm'r, v. G., C. & S. F. Ry. Co., 41 Tex. Civ. App. 596. That case involved the question of a grant of administration on the estate of a citizen of the Indian Territory, sought for the purpose of suing in Texas upon a claim for wrongful death occurring in Oklahoma. The essential facts in that case and the case we now have under consideration are almost identical. We quote paragraph 1 of the syllabus thereof as follows:

"Administration was granted in this state for the sole purpose of prosecuting a suit in this state against the appellee for damages, arising under the laws of the Indian Territory, for personal injuries to, and the death of, the decedent; said injuries were inflicted in the Indian Territory; the decedent resided with his family in Oklahoma Territory and died there; his family resided then, and at the time said administration was granted, in Oklahoma Territory; he had no kin in this state; he left no property of any kind in this state to be administered, nor has any property of his come into this state since his death, unless the claims for damages be considered property and assets of his estate. Held, the granting of letters of administration upon the estate of said decedent was coram non judice and void."

It is true that that court assigned numerous reasons for denying the right of administration in the Texas courts, but it is notable that one of the controlling reasons assigned was the same reason given by the court in the Jackson Case, supra, as found in the above quotations therefrom.

In the case of Hall's Adm'r v. L. & N. R. R. Co., 102 Ky. 480, the Supreme Court of Kentucky held in paragraph 2 of the syllabus as follows:

"While the personal representative of a resident of Kentucky negligently killed in another state may bring suit in this state, and while such representative of a nonresident of Kentucky negligently killed in this state may be appointed in the county in which the injury occurred, the county courts of this state are not authorized to appoint in any county in this state through which a railroad might run, an administrator of a nonresident, negligently killed in another state, for the sole purpose of bringing suit in this state upon a cause of action created by the statutes of such foreign state, although our statutes show legislation of a kindred nature."

And in the opinion it is said:

"Nor do we consider it material that the defendant (appel'ee), being a citizen of Kentucky, could have removed this suit, if brought by a Tennessee administrator in a Tennessee court, to the federal court. But while it has been settled that the representative of a resident of Kentucky negligently killed in another state may bring suit in Kentucky under the statute of the foreign state, and that a representative of a nonresident of Kentucky negligently killed in Kentucky may be appointed in the county in which the injury occurred, under authority of the necessary implication of the statute giving the right of action, in our opinion the doctrine has been extended as far as it should be, and we do not believe that it was intended to authorize the appointment in any county of this state, through which a railroad might run, of an administrator of a nonresident negligently killed in another state, for the sole purpose of bringing suit upon a cause of action created by the statute of such foreign state, although our statutes show legislation of a kindred nature."

In the case of Ziemer v. Crucible Steel Co. of America, 90 N. Y. Supp. 962, the Supreme Court of New York denied the grant of administration upon the estate of a nonresident who had no property within the state of New York, save an alleged cause of action arising under the laws of New Jersey. It would appear therefrom that the administration was denied largely because such cause of action was not enforceable in the state of New York, and therefore could not be considered property in that state to support the grant of administration.

In the case of In re Yarbough's Estate, 216 P. 889, the Supreme Court of Washington held:

"Letters of administration will not be granted, where the decedent was a resident of another state and there is no property within the state except the right to bring an action, under the laws of the other state, for wrongful death, which occurred in the other state."

In that case the deceased was a resident of Oregon, where he was killed by train owned and operated by an Oregon corporation. The only estate left consisted of the right of action against the railroad company. It is important to note that the record before that court did not disclose that the Oregon railroad corporation could be served with process in the state of Washington. Our examination of that case leads us to believe that the controlling reason for denying the grant of administration was the fact that the Washington courts did not have jurisdiction to enforce his claim against the railroad company arising under the laws of Oregon.

In this case the plaintiff alleges in his petition that the defendant is engaged in operating an oil refinery and gasoline plant in the state of Texas. Being so engaged there, we take it that such defendant is just as readily amenable to the service of process from the Texas courts as it is to the service of process from the courts of this state. We do not have before us the Texas statutes in this respect, in which case it will be presumed that the Texas law is the same as our own. Bershears v. Nelson Distilling Co. (Kan.) 101 P. 1011.

The action here is for recovery of exemplary damages only. Under our law no such recovery can be had. We do not mean to say that the laws of the two states as concerns the question are entirely repugnant, or that such a recovery would violate the public policy of this state. A resort to the briefs of the parties, however, would indicate that the question is attended with difficulty and leaves great doubt as to the proper construction of the Texas laws and whether the decisions of that state entirely settle the question of plaintiff's right of recovery. No opinion of the Texas Supreme Court is called to our attention which we consider entirely in point. In such circumstances it would appear questionable whether the courts of this state could do exact justice between the parties and arrive at an accurate interpretation of the laws of Texas relating to the subject. It would appear obvious that the courts of Texas cou'd better

settle its own laws in that respect. In view thereof, and in the absence of some compelling reason why the courts of our state should assume jurisdiction, the same should be denied.

No reason is shown or suggested why the venue in this action should be extended to this state through the rule of comity. On the contrary, we are persuaded to the belief that should the courts of this state exercise jurisdiction under the facts and circumstances here affirmatively shown, it would actually approximate an act of discourtesy to our sister state in presuming that our courts may more accurately or justly interpret and apply its laws. We therefore conclude that the trial court committed no error in sustaining the defendant's demurrer.

Having concluded that upon timely objections the trial court properly denied jurisdiction, it is then readily apparent that plaintiff's alleged cause of action was not such as might be enforced within this jurisdiction. We conclude further, therefore, that inasmuch as the alleged cause of action was the only purported property within the state, and that inasmuch as it cannot be enforced within the state, it may not properly be considered as being property within the state for the purpose of supporting the grant of administration. Under the rule announced in the Cooper Case, supra, the attack upon the grant of administration is direct and the defendant had the right of attack thereon. The trial court did not err in setting aside the grant of administration. The judgment is in all things affirmed.

BAYLESS V. C. J., and BUSBY, PHELPS, and GIBSON JJ., concur.