ROBERTSON, Justice:
The appellee, Mrs. Louise Pilgrim, Ad-ministratrix of the Estate of Charles Ray Pilgrim, Deceased, recovered a judgment for $55,000 against appellants, Illinois Central Railroad Company and its engineer, Danny John Callahan, in the Circuit Court of the Second Judicial District of Jones County, Mississippi.
Charles Ray Pilgrim, the 20-year-old son of appellee, was killed instantly when his automobile was hit by a passenger train of the appellant at a railroad crossing in the Town of Clinton, Mississippi.
The decedent moved'from’Taylorsville .to. Jackson on October 11,'1964, and went to work for Southern Carton Company in Clinton on October 12. He was killed eight days later about 10:15 p. m. on October 20, 1964, as he drove his 1956 Plymouth station wagon southward on West Lakeview Drive and onto the tracks of the appellant railroad.
West Lakeview Drive is a blacktop street in the Town of Clinton running generally north and south. A single set of tracks of *600 the appellant railroad company, running slightly northwest and southeast, crosses West Lakeview Drive at right angles and at grade level. Moving from west to east, this was the sixth such crossing of streets by these railroad tracks within the corporate limits of Clinton.
Both sides of West Lakeview Drive north of the crossing are heavily built up with residences. Immediately south of the crossing are a Sinclair Service Station and several small business establishments, and one block west is a rather large shopping center.
Witnesses’ testimony and the photographs and plat introduced into evidence show that West Lakeview Drive runs southerly until it reaches a point about 100 feet north of the tracks when it curves slightly to the southwest. East Lakeview Drive, also a blacktop street, parallels the railroad tracks and runs into the east side of West Lakeview Drive north of the railroad crossing. A street light is at the intersection of these two streets. There is another street light south of the railroad crossing on the west side of Lakeview Drive.
A Mississippi Law Stop Sign on the west side of West Lakeview Drive diagonally faces both West Lakeview and East Lakeview Drives and serves as a stop sign for both streets. The printing on this sign is faded and worn. The words “Mississippi Law” were streaked with rust and were illegible. Even the “Stop” was hard to read.
The decedent was not familiar with this railroad crossing and proceeded southerly on West Lakeview Drive and onto the railroad tracks without stopping. The train, traveling through the Town of Clinton at 52 to 55 miles per hour according to the engineer, hit the car of the decedent and pushed it about 240 feet before knocking it off of the tracks. Even with all brakes on, including the emergency brakes, the train traveled approximately 1300 feet, one quarter of a mile, before it could be stopped.
Appellants contend that there was insufficient evidence to support a jury finding that the Lakeview crossing was unusually dangerous or more than ordinarily hazardous and that, therefore, the question of negligence of appellants on account of the speed of the train should not have been submitted to the jury.
It is true that Section 7782 Mississippi Code 1942 Annotated (1956) technically does not cover the speed of a diesel locomotive. New Orleans & Northeastern Railroad Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963). It does set forth in clear and positive language the considered judgment of the Legislature as to a safe running speed for a locomotive and cars through cities and towns.
Section 7782 provides in part:
“Any railroad company having the right of way may run locomotives and cars by steam through cities and towns, at the rate of thirty miles an hour and no more-, and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than thirty miles an hour through any city or town. * * ” (Emphasis added).
The main purpose of this statute was to set a maximum speed limit for locomotives and cars running through cities and towns. From 1857 to 1938, the speed limit was 6 miles per hour, but in 1938 the Legislature increased it to 30 miles per hour.
As was said in Gulf & Ship Island Railroad Co. v. Bond, 181 Miss. 254, 179 So. 355, 181 So. 741 (1938), the statute
“[W]as designed to prevent injuries to persons which a greater speed might *601 cause, and to enable the crew operating the train to come to a stop, if necessary, within a short distance, to avoid injuring or killing persons who might he within reach of the train coming into, or operated in, such municipality. * * *” Id. at 274, 179 So. at 361.
Appellant’s train was traveling so fast that it required 1300 feet, one-quarter of a mile, to bring it to a full stop even after the emergency brakes had been applied.
From the testimony adduced and the photographs and plats exhibited, the jury would be justified in finding that this was a blind crossing; that the Mississippi Law Stop Sign did not squarely face West Lake-view Drive, that it was dilapidated and weatherbeaten, was not properly maintained, was practically illegible and did not give adequate warning of a railroad crossing; that Lakeview Drive was a heavily traveled street within the corporate limits of the Town of Clinton; that the view to the west was limited and obstructed by tall weeds, bushes, kudzu vines, shrubbery and a willow tree spreading to within a few feet of the north track.
The appellants stress the “brilliant headlight” atop the locomotive. The jury could well have concluded that with bright street lights on each side of the crossing, the beam of a headlight would not be noticeable.
The witnesses for the appellee testified that West Lakeview Drive was a heavily traveled thoroughfare in the Town of Clinton, and even engineer Callahan, on cross-examination, admitted this.
We think that the question of whether the speed at which the train was traveling constituted negligence, under the facts, circumstances and conditions of this case, was properly submitted to the jury for its determination. New Orleans & Northeastern Railroad Co. v. Burney, supra.
The appellants complain of the following general language used in an instruction for the appellee:
“[Tjhat the engineer operating the train in question had no right under the law to run the said train across the West Lake-view Drive crossing at. a greater rate of speed than was reasonably prudent or careful at said time, taking into consideration all the facts and circumstances that confronted him at said time. * * ”
They argue that this instruction did not give the jury any guide as to what was a reasonable or prudent rate of speed under the circumstances.
The facts and circumstances of this case were sufficient to warrant the jury in finding that this was a dangerous and unusually hazardous crossing, and that 52 to 55 miles per hour was not a reasonable or prudent rate of speed through town and through a dangerous crossing. The jury was not misled by this instruction.
The appellee was given only five instructions, while the appellants were granted fourteen instructions. The jury was fully and thoroughly instructed on every facet of the appellants’ defense. Considering all the instructions together, we think the jury was properly instructed as to the applicable law.
Finally the appellants question the amount of the verdict. They say that it is so excessive as to evince bias, passion and prejudice on the part of the jury. It must be remembered that the deceased was a young man 20 years old with most of his life before him. His widowed mother, his sisters and brothers would have enjoyed his love, affection and companionship for many years. If he had remained single, it is probable that he would have contributed substantial amounts toward the support of his mother over the years of his normal life expectancy. We cannot say that the verdict of the jury was so excessive as to *602 evince bias, passion and prejudice. The judgment of the circuit court is, therefore, affirmed.
Affirmed.
ETHRIDGE, C. J., and PATTERSON, INZER, and SMITH, JJ., concur.