344 So.2d 468 (1977)
ILLINOIS CENTRAL GULF RAILROAD, a Delaware Corporation, and L.J. Madison
v.
Mrs. Lula B. STEDMAN, Administratrix of the Estate of Henry Clay Stedman, Deceased.
No. 49270.
Supreme Court of Mississippi.
April 6, 1977.
*469 Gibbes, Graves, Mullins, Bullock & Ferris, Ernest W. Graves, Laurel, for appellants.
Heidelberg, Woodliff & Franks, Sam E. Scott, Pittman & Nobles, Jackson, Eugene C. Tullos, L.D. Pittman, Raleigh, for appellee.
Before INZER, SUGG and LEE, JJ.
INZER, Presiding Justice, for the Court:
This is an appeal by Illinois Central Gulf Railroad and L.J. Madison from a judgment of the Circuit Court of Smith County awarding appellee Mrs. Lula B. Stedman, administratrix of the estate of her deceased husband, Henry Clay Stedman, damages in the amount of $181,316 as a result of a truck-train collision.
Mrs. Stedman brought this suit in the Circuit Court of Smith County seeking to recover damages for the alleged wrongful death of her husband, Henry Clay Stedman. The accident resulting in the injury and death two days later of Mr. Stedman occurred on March 11, 1974, at about 4 p.m. at the southernmost railroad crossing in the Town of Sledge, Quitman County. The truck, owned by Quitman County and driven by Stedman, was struck by a locomotive operated by L.J. Madison. The declaration charged three principal grounds of negligence: (1) The train was traveling at a high, dangerous and unlawful rate of speed in excess of thirty miles per hour in violation of Mississippi Code 1972 Annotated, Section 77-9-237. (2) The train crew failed to properly sound the bell and whistle for the distance, time and place as required by Section 77-9-225, and (3) The failure to erect flashing signals or warnings or to give special warning at the intersection where the accident occurred since the intersection was highly hazardous because of obstruction to vision.
The railroad and its engineer answered and denied the charges of negligence and alleged that the sole proximate cause of the collision was the negligence of Mr. Stedman in failing to stop, look and listen as required by statute.
The evidence is in conflict as to whether the whistle was blown or the bell was rung as required. The train crew testified that the whistle was blown and the bell rung as required and two other witnesses testified to the same effect. Three witnesses, who were in the vicinity of the crossing, testified that they did not hear the whistle or bell. It is contended that their testimony was negative testimony and not sufficient *470 to make a jury issue on this question. However, when this testimony is taken in the light most favorable to the plaintiff, we are of the opinion that the trial court was correct in submitting this issue to the jury.
The testimony relative to the speed of the train is likewise in conflict. Madison testified that the train was traveling at about 35 miles per hour immediately prior to the time that he realized that the truck was not going to stop at the stop sign. He said he immediately took emergency procedures in an attempt to stop, but since the train was 115-120 feet from the crossing he was unable to stop. The report of the accident made by the railroad to the Public Service Commission placed the speed of the train at 35 miles per hour. The other crew members placed its speed at from 30 to 35 miles per hour. Other witnesses placed the speed at 40 to 45 miles per hour. The court, over the objection of the defendant, granted at the request of plaintiff, the following instruction:
The court instructs the jury that the statutory speed limit for the train through the Town of Sledge was 30 miles per hour; and if you believe from a preponderance of the credible evidence in this case that the train was traveling at a speed of more than 30 miles per hour and if you further believe from the preponderance of the evidence that the speed of the train was a proximate cause of the accident, then you should return a verdict for the plaintiff.
The giving of this instruction was error and under the circumstances of this case was highly prejudicial. As we view the case, it is a close one on liability. The proof is undisputed that Mr. Stedman drove his truck upon the crossing in front of the approaching train without ever stopping and apparently without looking. The jury could have found from the evidence in this case that the sole proximate cause of the accident was the negligence of Mr. Stedman. However, this instruction told the jury that if the train was traveling in excess of thirty miles per hour, that the railroad was violating the law and if this was a proximate cause of the accident, then they were bound to find for the plaintiff. We have heretofore held that Section 77-9-237, Mississippi Code 1972 Annotated, applies only to steam locomotives and has no application to locomotives operated by diesel or electricity. In New Orleans and N.E. RR v. Burney, 248 Miss. 290, 159 So.2d 85 (1963), we stated:
Insofar as the speed of the train constituting negligence because of its excessive rate is concerned, we do not agree with appellee that Sec. 7782, Miss. Code of 1942, controls. This section was written before there were any diesel electric trains in Mississippi and applied expressly to trains operated by the dangerous agency of steam. The prohibitions in this section relate only to steam powered trains, and the care which the trainmen were required to exercise in the case at bar was that ordinary care imposed by common law duty. The trainmen were under no duty greater than the common law duty to exercise ordinary care under the circumstances and conditions. Calvert v. Mobile & O.R.R. Co., 153 Miss. 866, 121 So. 855; Stapleton v. Louisville & N.R.R. Co., 5 Cir., 265 F.2d 738. (248 Miss. at 308, 159 So.2d at 94).
Appellee contends that this rule was modified in Illinois Central R.R. Co. v. Pilgrim, 220 So.2d 598 (Miss. 1969), wherein we stated:
It is true that Section 7782, Mississippi Code 1942 Annotated (1956) technically does not cover the speed of a diesel locomotive. New Orleans & Northeastern Railroad Co. v. Burney, 248 Miss. 290, 159 So.2d 85 (1963). It does set forth in clear and positive language the considered judgment of the Legislature as to a safe running speed for a locomotive and cars through cities and towns.
Section 7782 provides in part:
"Any railroad company having the right of way may run locomotives and cars by steam through cities and towns, at the rate of thirty miles an hour and no more; and the company shall be liable for any damages or injury which may be *471 sustained by any one from such locomotive or cars whilst they are running at a greater speed than thirty miles an hour through any city or town ..." (Emphasis added).
The main purpose of this statute was to set a maximum speed limit for locomotives and cars running through cities and towns. From 1857 to 1938, the speed limit was 6 miles per hour, but in 1938 the Legislature increased it to 30 miles per hour.
(220 So.2d at 600).
It is obvious that we did not overrule Burney and the other cases holding that the statute does not apply to any locomotives except steam locomotives. We did say that it was a clear indication of what the Legislature considered a safe running speed, but we did not have involved in Pilgrim an instruction telling the jury that the statutory speed limit was 30 miles per hour and that if the train was exceeding that speed, the railroad was guilty of negligence. It has been many years since this Court held that the statute applied to only steam locomotives and the Legislature has not seen fit to make it apply to other types of locomotives. Since the fixing of the speed limit of trains in a municipality is a matter peculiarly in the province of the Legislature, it is proper for the Courts of this state to abstain from attempting to fix the statutory speed limit for other types of locomotives. Although the trial court did grant another instruction involving speed, it did not in any way cure the defect in the instruction in question. Furthermore, we also note that the record reflects that the instructions on the issue of whether the crossing was unusually hazardous and dangerous are also in conflict.
Appellants also challenge the constitutionality of Section 11-11-5, Mississippi Code 1972 Annotated, the venue statute under which this suit was brought in Smith County. This issue has long since been settled by this Court, the most recent case being Mississippi Power Co. v. Luter, 336 So.2d 753 (Miss. 1976), wherein we upheld the constitutionality of the venue statute.
Appellants also urge that the trial court was in error in failing to sustain their motion to dismiss this cause under the doctrine of the forum non conveniens, or in the alternative grant a change of venue. The trial court after hearing testimony on the motion overruled it, although none of the parties or witnesses were residents of Smith County. Although we cannot say that the trial court abused its discretion in this regard, however, on remand the trial court should again consider the motion in light of the testimony given and the circumstances now existing, and if it finds that it is proper to do so, transfer the cause to a more convenient forum.
Appellants also raise the question relative to the amount of the judgment, but since the case must be tried by another jury, we need not comment on the amount of the judgment.
For the reasons stated, this cause must be and is reversed and remanded.
REVERSED AND REMANDED.
PATTERSON, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
GILLESPIE, C.J., took no part.