IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-01188 COA

MADHAVAN A. PISHARODI, M.D.

APPELLANT

v.

GOLDEN TRIANGLE REGIONAL MEDICAL CENTER, RADIOLOGY CLINIC OF COLUMBUS, WILLIAM R. FORD, M.D., B.L. SULLIVAN, M.D., C.B. DAHLKE, M.D., J.M. GRIFFITH, M.D., AND M.L.S. GAINES, M.D.

APPELLEES

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. LEE J. HOWARD

COURT FROM WHICH APPEALED: LOWNDES COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:

SHANE LANGSTON

JOHN G. HOLADAY

ATTORNEYS FOR APPELLEES:

AUBREY NICHOLS

MARC AMOS

NATURE OF THE CASE: TORT-TORTIOUS INTERFERENCE WITH MEDICAL PRACTICE, ANTI-TRUST VIOLATIONS, CONSPIRACY AND RESTRAINT ON TRADE

TRIAL COURT DISPOSITION: SUMMARY JUDGMENT GRANTED TO APPELLEES

MOTION FOR REHEARING FILED: 9/24/97

PETITION FOR CERTIORARI FILED: 11/17/97

EN BANC

McMILLIN, P.J., FOR THE COURT:

The case now before the Court comes on appeal from a grant of summary judgment in favor of the defendants entered in the Circuit Court of Lowndes County. The plaintiff, Madhavan A. Pisharodi, M.D., has appealed, assigning two issues for this Court to consider. We conclude that

neither of the issues presented requires this Court to disturb the judgment of the trial court. We affirm, offering the following analysis as the basis for our decision.

I.

The Proceedings at the Trial Level

Pisharodi commenced this action in the Circuit Court of the First Judicial District of Hinds County against the Golden Triangle Regional Medical Center (hereafter "Golden Triangle"), Radiology Clinic of Columbus (hereafter "the Clinic"), the individual doctors who were partners in the Clinic, and Dr. Robert R. Smith. Golden Triangle is a community hospital facility located in Lowndes County. The Clinic is also located in Lowndes County, and all of the Clinic partners were residents of Lowndes County. Smith was a resident of the First Judicial District of Hinds County.

Pisharodi, prior to filing his suit, had spent a number of years engaged in the practice of medicine in the Lowndes County area. His area of specialty was neurosurgery. At the time the complaint was filed, Pisharodi had left the Lowndes County area and relocated to the State of Texas, where he continued to practice in the same field of medicine.

Pisharodi's complaint advanced two causes of action. One sounded in tort and charged all defendants, acting in concert, with tortious interference with a business relationship. In essence, Pisharodi claimed that these defendants set about to maliciously damage his professional reputation in the Lowndes County area for the purpose of preventing or discouraging potential patients from using his services. The other asserted cause of action claimed that Golden Triangle and the Clinic had formed a trust or combine to monopolize or restrain trade in certain fields of medicine in the Lowndes County area in violation of this state's anti-trust laws, and that Pisharodi had been damaged thereby. Smith was not alleged to be a party to this combination. The only claim against him related to the malicious interference tort.

The Clinic filed, as a part of its answer, a motion to change venue of the case to Lowndes County. Smith, the only defendant from outside the Lowndes County area, filed a pleading waiving any right he had to insist on the case remaining in Hinds County and consenting to the proposed venue change. The Circuit Court of Hinds County entered an order transferring the case to the Circuit Court of Lowndes County over Pisharodi's objection. The Lowndes County Circuit Court ultimately granted summary judgment in favor of all defendants, and Pisharodi perfected this appeal as to all defendants except Smith.

Pisharodi raises the following issues: (a) he claims reversible error in the decision to change venue over his objection; and (b) he asserts that the trial court was manifestly in error in granting summary judgment.

## II.

## Facts of the Case

There does not appear to be a substantial dispute as to the operative facts upon which Pisharodi bases his claims for relief, and there is little to be gained by a detailed recital. We will recite a brief history of the events.

## A.

## Pisharodi's Conflicts with the Clinic

Pisharodi began practicing medicine in Lowndes County in 1986, specializing in the field of neurosurgery with full privileges at Golden Triangle. Early in his practice, he utilized the services of

the Clinic to provide CT scans on his patients, but claims that he was dissatisfied to some extent with the quality of the Clinic's work. When Golden Triangle subsequently obtained equipment to provide this service, Pisharodi began to use the hospital's services to the exclusion of the Clinic. Clinic members asked him to continue doing business there, but he declined. Pisharodi alleges that this "angered" the Clinic. Pisharodi also claims that he began efforts to have Golden Triangle recruit a neuroradiologist to practice in the Lowndes County area, and that, had this been done, the neuroradiologist would have competed directly with the Clinic in certain areas of practice. Pisharodi alleges that Golden Triangle did not undertake any such recruiting activities despite his encouragement because of pressures brought on Golden Triangle by members of the Clinic. Pisharodi alleges that his efforts in this regard also "angered" the Clinic.

B.

The Hospital's Peer Review Concerning Pisharodi

Based on Golden Triangle's continuous monitoring of all phases of its operation, there arose certain issues concerning the quality of practice of neurosurgery at the facility. In accordance with standard procedures in such instances, Golden Triangle undertook to have an independent review of the department conducted by disinterested learned experts. Such a procedure is commonly referred to as a "peer review." Under the process, the reviewer examines procedures in the department, reviews patient files, and writes an evaluation report containing the reviewer's findings, criticisms, and recommendations for improvement. The hospital requested two neurosurgeons from the Jackson area to take on this task, Dr. William Russell and the former defendant in this action, Dr. Robert Smith. The report filed by Smith included a critique of Pisharodi's performance in a number of surgical procedures based upon Smith's review of the patient files.

Pisharodi, in his complaint, alleges that, prior to obtaining this peer review, Golden Triangle and the Clinic conspired together to determine the best way to drive Pisharodi from the practice. He claims that the Clinic's "anger" over his activities provided the motivation for the plan. He also alleges that Smith knowingly cooperated in this plan by issuing a maliciously false report whose primary purpose was to destroy Pisharodi's professional reputation in the community and thereby deprive him of potential patients. Pisharodi alleges that the wide circulation given to the peer review report and the rumors that it fostered concerning his professional competency so damaged his reputation as a neurosurgeon that he was forced to abandon a previously lucrative practice and relocate out of the state.

C.

Facts Relating to The Anti-trust Claim

Pisharodi's anti-trust claim relies for its strength on the assertion that the Clinic and Golden Triangle conspired together and agreed not to recruit a neuroradiologist in the face of his urging that this be done. It must be noted that Pisharodi does not claim that he was in a position to provide such medical services. His claim, apparently, is that he was indirectly damaged by an inability to choose among competing providers when contracting for such services on behalf of his patients.

III.

The Change of Venue Issue

Pisharodi argues strenuously on appeal that there was reversible error in the decision of the Hinds County Circuit Court to grant a change of venue to Lowndes County in reliance on the doctrine of *forum non conveniens.* Without explicitly saying so, Pisharodi appears to argue that such authority simply does not exist. Alternatively, he suggests that the transfer was an abuse of discretion in that the factors which must be considered in ruling on the issue militate against transfer.

Most Mississippi Supreme Court cases dealing with the doctrine of *forum non conveniens* involved claims that the more convenient forum was outside the State of Mississippi. *See, e.g., Missouri Pac. R.R. v. Tircuit,* 554 So. 2d 878, 881-83 (Miss. 1989); *Illinois Cent. Gulf R.R. v. Stedman*, 344 So. 2d 468, 471 (Miss. 1977). Pisharodi correctly points out that different considerations arise when considering an intrastate transfer as opposed to an interstate shift in trial situs. The supreme court has recognized that designation of proper venue within the state is a legislative function, not a judicial one. *See McMillan v. Puckett,* 678 So. 2d 652, 656 (Miss. 1996). Thus, statutes establishing more than one venue for a particular cause of action would seem, of necessity, to vest the plaintiff with broad authority to choose the venue of his action. Pisharodi argues that such choice, being legislatively derived, should be beyond the authority of the court to disturb.

Our supreme court has never explicitly recognized the existence of intrastate *forum non conveniens* in a case directly challenging the existence of such a doctrine. However, in *Illinois Central Gulf Railroad v. Stedman*, 344 So. 2d 468 (Miss. 1977), the court dealt with the concept. In that case, the court reversed a plaintiff's judgment obtained in Smith County and remanded for a new trial. The accident in which Stedman had been killed occurred in Quitman County, and the railroad sought dismissal or change of venue under the *forum non conveniens* doctrine. *Illinois Cent. Gulf R.R.,* 344 So. 2d at 471. The trial court denied the motion, and the railroad raised the issue on appeal. The supreme court reversed the case on grounds not relating to the venue question, but said:

Appellants also urge that the trial court was in error in failing to sustain their motion to dismiss this cause under the doctrine of *forum non conveniens*, or in the alternative grant a change of venue. The trial court after hearing testimony on the motion overruled it, although none of the parties or witnesses were residents of Smith County. Although we cannot say that the trial court abused its discretion in this regard, however, on remand the trial court should again consider the motion in light of the testimony given and the circumstances now existing, and if it finds that it is proper to do so, transfer the cause to a more convenient forum.

*Id.* at 471.

While it does not appear that the plaintiff directly challenged the existence of the doctrine of intrastate *forum non conveniens* in *Stedman*, the court seemed to assume its existence. In 1987, one member of the supreme court again seemed to assume that such a right existed. Justice Prather dissented from the majority on a venue question not directly related to *forum non conveniens*, but, as a part of her discussion, said that her interpretation of the law would "not preclude the Board's application for, nor a trial court's granting, a change of venue to a forum of convenience." *Board of Trustees v. Van Slyke*, 510 So. 2d 490, 495 (Miss. 1987) (Prather, J., dissenting).

Other states, faced with this issue, have divided. Some states, such as West Virginia, take the position that the authority to change venue for the convenience of the parties must come from the legislature. *See, e.g., West Virginia ex rel. Riffle v. Ranson,* 464 S.E.2d 763, 767-68 (W. Va. 1995). Illinois, on the other hand, found such authority in the inherent power of the court to provide for the expeditious and efficient administration of justice. *See Torres v. Walsh,* 456 N.E.2d 601, 607 (Ill. 1983).

Conceding the plaintiff's right to initially choose the venue of his action when there are multiple choices available, it does not follow that this choice, once made, is irreversible. Section 11-11-51 of the Mississippi Code authorizes a change of venue upon a showing by a party in a civil action "that he has good reason to believe, and does believe that, from the undue influence of the adverse party, prejudice existing in the public mind, *or for some other sufficient cause to be stated in the petition*, he cannot obtain a fair and impartial trial in the county where the action is pending . . . ." Miss. Code Ann. § 11-11-51 (1972) (emphasis supplied). Whether a defendant, sued in a distant venue for an incident occurring in his home county, may complain that the burdens associated with presenting his defense in the distant venue would so hinder him that he would be deprived of a "fair" trial would seem to be at least an arguable interpretation of the "other sufficient cause" language of the statute. *See* Miss. Code Ann. § 11-11-51 (1972).

This Court concludes, on the foregoing analysis, that we cannot hold, as Pisharodi would urge, that the trial court's transfer of venue to this case was an absolutely void act depriving the Lowndes County Circuit Court of jurisdiction to proceed on the matter. Even were we to conclude that the transfer was a manifest abuse of discretion, we are of the opinion that the plaintiff has failed to demonstrate any prejudice arising from the transfer that would require us to reverse. The case was decided on summary judgment motion, so that there can be no claim that a jury was improperly swayed in favor of the local defendants. There is no allegation and no proof that the discovery process was, in any way, hindered by the transfer of the case. In fact, the record reveals that a substantial portion of the discovery was completed before the case was transferred. The judge who ruled on the summary judgment motion was a circuit judge competent in all respects to rule on the motion. In ruling upon questions of law, it makes little practical difference what judge addresses the issue so long as jurisdiction exists. Within a multi-judge district, cases are often assigned by purely random means. It is not uncommon for a judge in one district to receive special commission to preside over a particular proceeding in another district. What judge rules on a pure issue of law does not appear to have any particular relevance if the ruling is legally correct. Thus, considerations of judicial economy

would seem to suggest that any error in the transfer of venue, even if unequivocally established, would not entitle Pisharodi to relief unless some prejudice can be shown to have arisen. Pisharodi has not suggested such prejudice, nor has he demonstrated any factual basis for its existence.

This Court notes that, in a somewhat related situation, the idea of conserving judicial resources by preventing needless retrial of an issue decided by a competent court has risen to constitutional level. Section 147 of Article 6 of the Constitution of the State of Mississippi states that, if a case is mistakenly tried to conclusion in either the chancery or circuit court when it should have been in the other court, the judgment may not be reversed solely on an erroneous determination of whether the case was of equitable or common law origin. *See* Miss. Const. art. VI, § 147; *see also Texaco, Inc. v. Addison,* 613 So. 2d 1193, 1198 (Miss. 1993). While this provision of the constitution has no direct application to this case, we find it persuasive that a similar result is proper in this case, where jurisdiction certainly existed, and venue was proper in either circuit court district.

Were it necessary to reverse this case on some other ground, then certainly it would be proper for this Court to reach the venue question and remand to the proper court; however, in this instance, for the reasons that follow, we have concluded that the grant of summary judgment was proper. If summary judgment is proper as a matter of law, it is proper in any circuit court district of this State, and a reversal and remand under these circumstances solely on an alleged error in venue would be senseless.

## II.

### The Summary Judgment Issue

The trial court rendered summary judgment as to both of the causes of action, finding that there were no disputed material issues of fact and that, based on the undisputed facts, the defendants were entitled to judgment as a matter of law. As required by our law, we conduct a *de novo* review of this judgment. *See Caldwell v. Alfa Ins. Co.,* 686 So. 2d 1092, 1095 (Miss. 1996). We will examine the two causes of action separately.

### A.

### Tortious Interference With a Business Relation

As this Court understands Pisharodi's argument, he does not deny that the material facts of the case are largely undisputed. He asserts, rather, that these undisputed facts are sufficient to support a finding by the jury that the actions of the Clinic and Golden Triangle were undertaken with improper ends in mind. If that were the case, we would agree that summary judgment was improper. Where the

facts are largely undisputed yet capable of different interpretation, at least one of which would permit recovery, the supreme court has said that summary judgment is not proper. *See American Legion Ladnier Post Number 42, Inc. v. City of Ocean Springs,* 562 So. 2d 103, 106 (Miss. 1990).

The operative undisputed fact relating to the claim of improper interference with Pisharodi's medical practice is this: Golden Triangle procured a peer review of the neurosurgery department that included an evaluation of Pisharodi's performance on a number of surgical procedures performed at the facility.

Pisharodi claims that the true motivation for the peer review process was to obtain a maliciously false and highly critical evaluation of his abilities as a neurosurgeon. He claims that the Clinic used its influence to enlist Golden Triangle to go along with this scheme. These defendants, acting in concert, persuaded Smith to issue the undeservedly critical report, and then gave the report wide dissemination for the express purpose of destroying Pisharodi's professional reputation in the community.

The evident problem with Pisharodi's assertions is that they are based upon absolutely nothing beyond his conjecture as to the actual motivation of the defendants. Golden Triangle's evidence in support of its summary judgment motion established that the peer review was prompted due to a statistically significant number of "drop-out" files relating to Pisharodi's surgical procedures. Hospitals, as a part of quality control, routinely conduct in-house reviews of files relating to patient care. When discrepancies or questionable items are noted by the reviewing official, the file "drops out" for further investigation as to whether the matter may be explained or whether it indicates some problem when compared with established medical standards. At Golden Triangle, the in-house review that was causing a number of Pisharodi's files to "drop out" was conducted by a hospital official having no established connection with any member of the Clinic, and there is no evidence that this reviewing official was improperly singling out Pisharodi's files. There is no legitimate dispute that there were enough problems noted in Pisharodi's "drop out" files that an independent review was warranted. Pisharodi presented no evidence that would dispute this fact. Thus, it is difficult to envision how a jury could legitimately conclude, faced with this evidence, that the peer review was only a pretext to wrongly malign Pisharodi's surgical abilities.

Pisharodi claims that, by virtue of some past connections between Smith and some of the defendant doctors, the jury could logically infer that Smith was selected because of his willingness to go along with the plan. Alternatively, he claims that the jury could conclude Smith's participation in the plan was motivated by a desire to remove Pisharodi as a competitor, since Smith did similar surgeries in Jackson and admitted that, on occasion, he may have had a patient from the within Golden Triangle's service area. Pisharodi presented no evidence other than his own speculation in support of such allegations, and we conclude that his testimony, unsupported by anything else, would have been patently insufficient to create a jury issue on those points.

The peer review report itself is made a part of the record, and one has only to read it to determine that, though some criticisms of Pisharodi's practice are offered, the remarks appear generally constructive in nature, and the report, on the whole, is free of language detrimental of Pisharodi's surgical abilities. Significantly, nowhere in his brief to this Court does Pisharodi point out any particular areas of the peer review report that he considers maliciously false and derogatory. Rather,

he simply relies on his characterization of the report and insists on his right to try to persuade a jury to agree with his analysis.

Pisharodi presented no affirmative evidence that the Clinic was an active participant in a scheme to improperly obtain such a peer review other than an allegation that some members of the Clinic also served in official capacities at Golden Triangle, and that the Clinic was "angry" at him. From these facts alone, he contends that a jury could properly determine the Clinic's culpability in this plan to destroy his practice.

This Court is firmly convinced that, on the allegation of a conspiracy to malign Pisharodi's skills through an improperly obtained peer review materially false in its contents, Pisharodi failed to present sufficient evidence to create a contested issue of fact as to the underlying motivations of the Clinic or Golden Triangle. Based upon our review of the record, we cannot conclude that the trial court was in error in granting summary judgment. There simply are not enough evidentiary building blocks to construct a case of liability against these defendants.

B.

The Anti-Trust Claim

We dispose of this matter in short fashion. Pisharodi claims a combination in restraint of trade in regard to the provision of neuroradiological services in the Lowndes County area existed. Section 75-21-1 of the Mississippi Code of 1972 makes illegal a "combination . . . between two or more persons, corporations or firms or association of persons . . . when inimical to public welfare and the effect of which would be . . .[t]o restrain trade . . . ." Miss. Code Ann. § 75-21-1 (1972).

Pisharodi claims that the participants in this combination were the Clinic and Golden Triangle. His proof of the existence of this combination consisted of a claim that he encouraged Golden Triangle to recruit a neuroradiologist to the area, apparently for the purpose of providing services that would compete with those offered by the Clinic, and that Golden Triangle did not do so.

In order for such a claim to have merit, we would have to conclude that Pisharodi's suggestion to Golden Triangle gave rise to a legal duty on the part of that hospital to undertake a recruiting effort for a neuroradiologist. Such a proposition simply cannot stand up to scrutiny. There is not one scintilla of evidence that either the hospital or the Clinic took any affirmative act to discourage or prevent a medical practitioner providing services of the same nature as the Clinic from locating in the Lowndes County area. Neither is there an issue of fact as to any affirmative duty allegedly owed by either party to seek out a competitor for the Clinic. Pisharodi's speculations on what reason Golden Triangle chose to ignore his suggestion do not create, by any stretch, a contested issue of fact which, if resolved favorably to Pisharodi, would permit an award of damages for a violation of this State's anti-trust laws.

**THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT ON CHANGE OF VENUE FROM HINDS COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE**

**ASSESSED TO THE APPELLANT.**

**THOMAS, P.J., COLEMAN, PAYNE, AND SOUTHWICK, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE OPINION JOINED BY BRIDGES, C.J., HERRING AND KING, JJ. HINKEBEIN, J., NOT PARTICIPATING.**

IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-01188 COA

MADHAVAN A. PISHARODI, M.D. APPELLANT

v.

GOLDEN TRIANGLE REGIONAL MEDICAL

CENTER, RADIOLOGY CLINIC OF

COLUMBUS, WILLIAM R. FORD, M.D., B.L.

SULLIVAN, M.D., C.B. DAHLKE, M.D., J.M.

GRIFFITH, M.D., AND M.L.S. GAINES, M.D. APPELLEES

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

DIAZ, J., DISSENTING:

I respectfully dissent from the majority opinion. Mississippi's venue statute provides in part: "Civil actions of which the circuit court has original jurisdiction shall be commenced in the county in which the defendant *or any of them* may be found, . . . ." Miss. Code Ann. § 11-11-3 (1972) (emphasis added). The supreme court has held that "[i]n suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants." *Blackledge v. Scott*, 530 So. 2d 1363, 1365 (Miss. 1988). In the case at bar, all of the defendants were residents of Lowndes County, except for Smith who was a resident of Hinds County. Therefore, venue was proper in Hinds County as to all defendants.

The plaintiff has the inherent right to select among all venues in which the action may be brought, and his choice must stand absent credible evidence supporting a change of venue. *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1155 (Miss. 1992). In other words, "the court at trial must give the plaintiff the benefit of the reasonable doubt, and we do so on appeal as well." *Id.* "If venue is proper when and where suit is filed, it may not be ousted by later events." *Id.*

Because venue is as much a plaintiff's right as a defendant's, the trial court is not precluded from considering a change of venue when a party shows that he cannot obtain a fair and impartial trial in the county where the action is pending. Miss. Code Ann. § 11-11-51 (1972). Thus, where the court finds that it is appropriate to do so, it may move the cause of action to a more convenient forum. *Illinois Cent. Gulf R.R. v. Stedman*, 344 So. 2d 468, 471 (Miss. 1977). The appellees in this case, however, failed to prove that they would have been denied a fair and impartial trial in Hinds County. Rather, they supported their *forum non conveniens* argument with the fact that medical care in the Lowndes County area would have been crippled if they were forced to defend in Hinds County and that they would be required to incur higher costs of obtaining the attendance of unwilling witnesses. They also argued that Pisharodi's choice of venue should be afforded less weight since he was a nonresident of the State of Mississippi when the complaint was filed.

While defending in Hinds County may have been more burdensome on the appellees than defending in Lowndes County, the statute clearly provides that mere inconvenience is insufficient grounds for a change of venue from an obviously proper forum. The appellees failed to prove that Pisharodi's choice of venue would have denied them a fair and impartial trial.

For the foregoing reasons, Pisharodi's choice of venue was proper and the trial court erred in transferring the case to Lowndes County. Proper venue may only be transferred upon a showing of defendant's inability to receive a fair and impartial trial. That did not occur in this case, and the judgment of the Lowndes County Circuit Court should be reversed.

**BRIDGES, C.J., HERRING AND KING, JJ., JOIN THIS SEPARATE OPINION.**