(81 App. Div. 582.)

### COLLARD v. BEACH.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. NEGLIGENCE—AUTOMOBILE—EXCESSIVE SPEED—FAILURE TO GIVE SIGNALS—ACTION—INSTRUCTIONS.

In an action for injuries owing to negligence in the running of defendant's automobile at an excessive speed, and without proper signals, it appeared that the automobile was being operated by defendant's son, and it was disputed whether it was in the custody of the son or the coachman, who was in it. The court charged generally that plaintiff could not recover unless the automobile was being directed by the coachman or son on behalf of the defendant, and refused to charge that if defendant left his automobile in charge of his son to take home, or in charge of the son and coachman together, or of the coachman alone, and the coachman neglected his duty, and allowed the son to run the machine, and by the son's negligence the accident happened, defendant was responsible. Held that, there being evidence of all the elements of liability referred to in the refused request, its refusal was reversible error.

2. JURISDICTION—SUIT BETWEEN NONRESIDENTS—TORT COMMITTED IN ANOTHER STATE.

The courts of New York will decline jurisdiction of actions between nonresidents for a tort committed in another jurisdiction, unless special circumstances exist.

Appeal from Trial Term, New York County.

Action by George W. A. Collard against Frederick C. Beach. From an order granting a motion to set aside the verdict for defendant, and for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Wm. McAdoo, for appellant.

R. E. De Forest, for respondent.

PATTERSON, J. This action was brought to recover damages for personal injuries sustained by the plaintiff under the following circumstances: The plaintiff was a physician and surgeon at Bridgeport, in the state of Connecticut. On the 21st day of October, 1898, he drove a horse attached to a top wagon along one of the public streets of Bridgeport, and had stopped in front of the residence of one of his patients. He alighted from his carriage, and was standing

by it attempting to take a hitching rein from the body of the carriage, with which to fasten his horse to a post, when, as he claims, an automobile or horseless vehicle, moved by electricity and in charge of one of the defendant's servants, came behind his carriage at a great rate of speed, frightened his horse, which ran away, and the plaintiff, being entangled in the reins, was dragged by the frightened horse some distance, and was seriously injured. The plaintiff alleged that the negligence of the defendant's servant in charge of the automobile consisted in the high rate of speed at which that machine was being driven, in being on the wrong side of the highway, and in the failure to give any warning to the plaintiff, by sounding a gong or bell or whistle or other signal, of the speedy approach of the automobile. The defendant's answer admits the ownership of the electrical machine or automobile, and puts every other allegation of the complaint in issue.

On the trial it was disclosed that both the plaintiff and the defendant were residents of the state of Connecticut. The occurrence was in that state, but there is nothing in the pleadings to show the residence of the defendant. One of the principal questions involved on the trial of the cause related to the vehicle being at the time of the accident in the charge of a servant or agent of the defendant whose negligence would be imputable to the latter. When the plaintiff's horse became frightened and ran away, the occupants of the automobile were the son and the coachman of the defendant. It would appear that at that time the son was guiding or controlling the machine. The defendant had just before the accident gone from his residence to the railway station at Bridgeport in this machine, and it was on the way back. It was evidently in charge either of the defendant's son or his coachman. It was a disputed question of fact whether the machine was left in the custody of the son or the coachman. The judge charged the jury generally and correctly on the subject of the responsibility of the owner for the negligence of a servant in charge of the vehicle of the owner when using that vehicle in or about the business of the owner, and gave the instruction that the plaintiff could not recover unless the defendant's vehicle at the time of the accident was being operated by the defendant's coachman or son on behalf of the defendant.

The court was expressly requested to charge as follows:

"Fourth. If the jury find either that the defendant left the automobile in charge of his son to take it home, or in charge of his son and coachman together to take it home, or in charge of the coachman alone, and the coachman neglected his duty in that regard, and allowed the son to run the machine, and by the negligence of the son the accident occurred, without contributory negligence on the plaintiff's part, then, in either case, the defendant is responsible and liable for that negligence and its consequences."

The jury found a verdict for the defendant, and the plaintiff then moved to set it aside and for a new trial, which motion was denied. Subsequently, the court, of its own motion, directed a reargument of the motion to set aside the verdict and for a new trial, and a reargument was had. The motion was then granted specifically on the ground of error in refusing to charge the fourth request above quot-

ed. From the order granting the motion for a new trial the present appeal is taken.

That the justice was right in granting this new trial on the particular ground specified by him we think is plain. There was evidence in the case of all the elements of liability referred to in the refused request, and we agree with the trial justice that in a case of this character the jury should be specifically instructed upon each and every element of liability. This request was plain and pointed, and, on the merits, we have no reason to doubt that the plaintiff is entitled to a new trial.

But the action of the court below in ordering a new trial leaves this case in a situation which renders it necessary for us to consider a subject which has become one of grave importance. The plaintiff here was a nonresident of this state, as was also the defendant; the occurrence giving rise to the action happened without the state; and the wrong, if any were done, was committed in the state in which both parties resided. The habit of importing such litigations as this into this jurisdiction, consuming the time of the courts, and requiring the people of the state of New York to bear the burden and expense of trying actions which ought to have been brought in other jurisdictions, where the home courts of litigants are open to afford adequate remedies, has become a great abuse and a just subject of complaint and protest. If it is to be encouraged, as was said in Hoes v. N. Y., N. H. & H. R. R. Co., 173 N. Y. 441, 66 N. E. 119, the flood gates of litigation in similar cases will be wide open, "if not to establish a new legal industry, at all events to impose upon our already overworked courts the obligation to try actions imported from foreign jurisdictions." Of course, as against foreign corporations, the action would not be entertained, for want of jurisdiction. In the case cited, the Court of Appeals strongly reprobated a device by which it was sought to acquire jurisdiction over the foreign corporation in an action of tort, but the remarks quoted apply with equal force to the whole class of actions of the same character, whether brought against corporations or natural persons.

There is no doubt that this court has jurisdiction of an action of this character between nonresident individuals, where the wrong or trespass is committed in another jurisdiction, but we decline jurisdiction in actions of this character, even between natural persons. We have acted upon the rule declared in Ferguson v. Neilson (Sup.) 11 N. Y. Supp. 524. In Wertheim v. Clergue, 53 App. Div. 124, 65 N. Y. Supp. 750, the cases are cited and commented upon, and from those cases we concluded that there is a fully established rule that the courts of this state, in the exercise of a sound judicial discretion, will decline jurisdiction between foreigners or nonresidents founded upon personal injuries or purely personal wrongs, unless special circumstances are shown to exist which require the retention of jurisdiction.

In the case at bar there is not a fact or circumstance suggested in the whole record, which we have read with attention, why the courts of this state should be vexed with this particular litigation. In Wertheim v. Clergue, supra, it was sought to apply the rule to an action upon contract, and we held it did not apply to such a case, but

it remains in full operation as to cases of the character of the one now before us.

The statement of the substantial facts in the case has been made for the purpose of showing that there is nothing now appearing that should induce the court to retain jurisdiction of this action.

The result of the order appealed from is to leave the parties in the position in which they stood before the trial, with the superadded fact that it now appears to the court on the record that the defendant was a nonresident. But the subject now considered was not raised in the court below. It is one of jurisdiction, of which the court can take cognizance at any stage of the case. As said by Van Brunt, P. J., in Ferguson v. Neilson, supra, it is against the settled policy of the state to permit our courts to be used by nonresidents for the redress of personal injuries received in the state of their domicile. Inasmuch, however, as on another trial the plaintiff may be able to show that the defendant has changed his residence to this state, or that special circumstances exist which should induce the court to retain jurisdiction, we conclude that the order should be affirmed, with costs of this appeal. All concur.