# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-IA-01284-SCT

*HENRY CLARK*

*v.*

*LUVEL DAIRY PRODUCTS, INC. AND JAMES H. BRISCOE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/96 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TYLVESTER O. GOSS |
| ATTORNEY FOR APPELLEES: | JOHN D. PRICE |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 11/25/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/16/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Henry Clark, the appellant, sued Luvel Dairy Products, Inc., and its president, James H. Briscoe, the appellees, in Hinds County Circuit Court for actionable words, false imprisonment, and defamation. That court ordered venue transferred to Attala County upon the motion of the appellees based on the doctrine of forum non conveniens. This Court granted interlocutory appeal.

### I.

### FORUM NON CONVENIENS - HISTORICAL DEVELOPMENT

¶2. As recognized by the United States Supreme Court, "[a]lthough the origins of the doctrine [of forum non conveniens] in Anglo-American law are murky, most authorities agree that forum non conveniens had its earliest expression . . . in Scottish estate cases." ***American Dredging Co. v. Miller***, 510 U.S. 443, 449 (1994). The first Scottish cases dealt with the plea of "forum non competens." The plea, which was normally directed to a lack of jurisdiction, "was sustained in cases where the jurisdiction seemed clear but the parties were nonresidents and trial in Scotland would have been inconvenient." Edward L. Barrett, Jr., ***The Doctrine of Forum Non Conveniens***, 35 Cal.L.Rev. 380, 387 n. 35 (1947) (*citing **Vernor v.***

*Elvies,* 6 Dict. of Dec. 4788 (1610); *Col. Brog's Heir v. _____,* 6 Dict. of Dec. 4816 (1639); *Anderson v. Hodgson,* 6 Dict. of Dec. 4779 (1747)).

¶3. By 1845, Scottish cases discussed the question in terms of one "on the merits" rather than jurisdiction, and the words "inconvenient forum" were beginning to be used. The Latin term "forum non conveniens" was used by Scottish judges for the first time in the latter part of the nineteenth century. Robert Braucher, *The Inconvenient Federal Forum*, 60 Harv.L.Rev. 908, 909 (1947). "Forum non conveniens" was used by the courts instead of "forum non competens" when the court's jurisdiction was clear and "only a question of discretion was involved." Barrett, 35 Cal.L.Rev. at 387 n. 35 (*citing Brown v. Cartwright,* 20 Scot.L.R. 818 (1883); *Williamson v. North-Eastern Ry. Co.,* 21 Scot.L.R. 421(1884)).

¶4. A case which is considered to be a leading case in England dealing with the doctrine is *Logan v. Bank of Scotland*, 1 K.B. 141 (C.A. 1905). In that case, the plaintiff, a domiciled Scotsman, brought an action against the defendant bank, a Scottish corporation with head offices in Edinburgh. The transactions which gave rise to the cause of action took place in Scotland. All the parties involved in the action resided in Scotland with the exception of one of the defendants. The bank had one branch outside Scotland, and it was located in London. The writ of summons in the action was served on the bank in London. The defendants moved to have the action in England stayed on the ground that the action was vexatious and oppressive.

¶5. The English court granted the stay. In so doing, the court cited three cases dealing with forum non conveniens, a New York case, *Collard v. Beach*, 81 N.Y.S. 619 (1903) (declining jurisdiction of tort action occurring in another jurisdiction between nonresidents), and the Scottish cases of *Longworth v. Hope*, 3 M. 1049 (1865) (dismissing the plea in a libel action between Englishmen because the libel was published in Scotland), and *Williamson v. North Eastern Ry. Co.*, 11 R. 596 (1884) (sustaining a plea of forum non conveniens where a Scottish resident sued a company located in England for negligence in a death occurring in England). The court noted that the cases "seem to carry the law further in those countries than can be found in any reported case in this country." *Logan*, 1 K.B. at 148. While noting that the court should stay proceedings on the ground of vexation only with great care, the court held,

> Now, it is true that the Courts of this country have not gone so far as to express themselves upon the question of convenience in terms similar to those used in the Scotch cases, though, as I have already noticed, it may be doubted whether there is any substantial difference between the two. Yet it seems to me clear that the inconvenience of trying a case in a particular tribunal may be such as practically to work a serious injustice upon a defendant and be vexatious. This would probably not be so if the difference of trying in one country rather than in another were merely measured by some extra expense; but where the difficulty for the defendant of trying in the country in which the action is brought is such that it is impracticable to properly try the case by reason of the difficulty of procuring the attendance of busy men as witnesses, and keeping them during a long trial, and of having to deal with masses of books, documents, and papers which are not in the country where the action is brought, and of dealing with law foreign to the tribunal, it appears to me that a case of vexation in some circumstances may be made out if the plaintiff chooses to sue in that country rather than in that where everybody is and where all the witnesses and material for the trial are.

*Id.* at 151-52. The court further noted that if the one defendant who was an English resident were a real defendant rather than a nominal defendant and it had been necessary to bring an action to join him and the

bank in England, then the defendant bank might have had to submit to the action brought in England. *Id.* at 153.

¶6. In the United States, the doctrine of forum non conveniens appeared in the 1800s in the jurisprudence of a few state courts although the phrase "forum non conveniens" was not used. These cases involved suits between aliens on foreign causes of action or parties who were residents of different states. Barrett, 35 Cal.L.Rev. at 387 n. 36. Following a 1929 law review article whose author contended that "all American courts had inherent power to decline jurisdiction under the doctrine" of forum non conveniens, the term "forum non conveniens" began to be used by courts. *Id.* at 388 (citing Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Colum.L.Rev. 1 (1929)). The doctrine originated in state courts not in federal court. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 505 n. 4 (1947); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 n. 13 (1981) ("The doctrine . . . originated in Scotland . . . and became part of the common law of many States . . ."). By 1947, the doctrine had gained acceptance in barely half a dozen states. Barrett, 35 Cal.L.Rev. at 388-89.

¶7. In 1947, the United States Supreme Court rendered two decisions which settled the question of the power of the federal courts to apply forum non conveniens. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the Court recognized that a federal court has the discretion to dismiss a case even when it has jurisdiction if the plaintiff has a choice of courts and the convenience of witnesses and the ends of justice would be better served by another forum. To that end, the Court prescribed a number of factors to be used in determining if the case should be dismissed. The Court also approved the dismissal of a case by applying forum non conveniens in *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947).

¶8. The following year, Congress enacted section 1404(a) of Title 28 of the United States Code. The section allows a district court to transfer a civil action to another district court for the convenience of parties and witnesses and in the interest of justice. In *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955), the Supreme Court discussed the difference between the doctrine of forum non conveniens as it existed prior to enactment of section 1404(a) and after enactment.

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in *Ex parte Collett*, 337 U.S. 55-61, Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

*Id.* at 32. By virtue of enactment of section 1404(a), the doctrine of forum non conveniens in federal cases has continuing application only where the alternative forum is abroad. *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994).

¶9. We have recognized the doctrine of forum non conveniens in cases involving out-of-state defendants requesting transfer to another state. *See Missouri Pac. R.R. v. Tircuit*, 554 So.2d 878 (Miss. 1989); *Shewbrooks v. A.C.&S., Inc.*, 529 So.2d 557 (Miss. 1988); *Illinois Cent. Gulf R.R. v. Stedman*,

344 So.2d 468 (Miss. 1977); *Illinois Cent. R.R. v. Moore*, 215 So.2d 419 (Miss. 1968); *Strickland v. Humble Oil & Ref. Co.*, 194 Miss. 194, 11 So.2d 820 (1943).

## II.

## INTRASTATE FORUM NON CONVENIENS

¶10. A majority of states have enacted statutes which provide for a change of venue when the convenience of witnesses and the ends of justice would be promoted by the change. A few states provide for a change of venue by rule. In the absence of statutory authority, the courts in some states have allowed a change of venue under the doctrine of intrastate forum non conveniens, while the courts in a number of other states have rejected the doctrine of intrastate forum non conveniens and refused to allow venue to be changed for the sake of convenience.

¶11. The Illinois Supreme Court adopted the doctrine of intrastate forum non conveniens in 1983 in the case *Torres v. Walsh*, 456 N.E.2d 601 (Ill. 1983). The court recognized the authority to transfer a case to another county within the same state as existing at common law and that "therefore, statutory authorization is unnecessary as it only recognizes and codifies a right that previously existed at common law." *Id.* at 605. As the basis for finding that the doctrine of forum non conveniens originated in the common law of England which Illinois adopted as it existed prior to the fourth year of James the First, the court cited cases from England which said that "removal to another county might be had 'for the necessity of an indifferent trial.'" *Id.* at 605 (citations omitted). Specifically, the court cited the English case of *Holmes v. Wainwright*, 3 East. 329, 330, 102 Eng.Rep. 624 (1803) to support its adoption of the doctrine of forum non conveniens. In this case, the Illinois Supreme Court said, "The [English] court applied the forum non conveniens doctrine and transferred the case from London to Yorkshire." *Torres*, 456 N.E.2d at 606. The court has continued to apply the doctrine in subsequent cases.

¶12. Oklahoma adopted intrastate forum non conveniens in *Gulf Oil Co. v. Woodson*, 505 P.2d 484 (Okla. 1972). Citing its Code of Civil Procedure, an unreported Oklahoma case, and a case from Kansas involving interstate forum non conveniens which held that the doctrine of forum non conveniens is a part of the common law of the state of Kansas, the Oklahoma Supreme Court held that the doctrine of intrastate forum non conveniens may under the common law be applied in a proper case.

¶13. The Missouri Supreme Court has declined to adopt the doctrine of intrastate forum non conveniens in the absence of statutory authority. In *Willman v. McMillen*, 779 S.W.2d 583 (Mo. 1989), the court stated that venue is within the legislature's province. As such, the court "may not engraft upon a statute provisions that do not appear explicitly or by implication from other words in the statute" especially since "[t]he statutory designation of proper venue as the site where the cause of action accrued presupposes legislative determination that it cannot be overly inconvenient for a defendant to appear in that location." *Id.* at 585-86. The court also rejected the notion that intrastate forum non conveniens existed at common law. The court said that the part of the English common law which was adopted by Missouri was that existing prior to the fourth year of the reign of James I (1607), and no English cases had been found dealing with the doctrine earlier than an 1803 case. In any event, such cases "would not be dispositive because travel between English counties prior to 1607 would be more analogous to travel between American states than between Missouri counties." *Id.* at 586.

¶14. In *First Financial Trust Co. v. Scott*, 929 P.2d 263 (N.M. 1996), the Supreme Court of New

Mexico expressly disapproved the doctrine of intrastate forum non conveniens, overruling prior case law in New Mexico which had recognized application of the doctrine since 1985. The court was highly critical of Illinois and Oklahoma which rely on common law as the authority for application of the doctrine. In noting that the Illinois Supreme Court relied on an English case which had involved the transfer of a case from London to Yorkshire as a basis for finding that forum non conveniens existed at common law, the New Mexico Supreme Court refused to "find the transfer from a county in southern England to another county in northern England at the beginning of the nineteenth century to be sufficiently analogous to the transfer between counties in the State of New Mexico at the end of the twentieth century." *Id.* at 267.

¶15. With regard to Oklahoma, the court noted that Oklahoma had recognized the doctrine by citing an unreported case which had allowed intrastate forum non conveniens even though acknowledging that the case had no precedential value. Additionally, the court recognized that the doctrine of forum non conveniens existing at common law allowed for the dismissal, not the transfer, of a lawsuit and that the federal statute providing for forum non conveniens was an expansion of the common law doctrine, not a codification. *Id.* at 265 (*citing* **Piper Aircraft Co. v. Reyno**, 454 U.S. 235, 253 (1981)). In sum, the court stated,

> We have been unable to find any persuasive precedent in the common law, of this state or any other, for the continued recognition of this doctrine, and we believe it would be improper to allow [prior case law] to stand in light of our analysis. . . . We are well aware of certain problems that may arise from the absence of a transfer mechanism based upon the convenience of the parties, but it is improper for the judiciary to create such a mechanism when the legislature has determined the policy of this state relative to election of proper venues.

*Id.* at 267.

### III.

### ANALYSIS

¶16. A review of the history of the doctrine of forum non conveniens reveals no support for the idea that forum non conveniens should apply in an intrastate context. The doctrine grew out of Scottish and English cases which involved parties of or matters in another country and was never applied to parties or matters located entirely within one country.

¶17. However, English common law courts did allow a change of venue from one county within England to another for the convenience of witnesses in some situations. Because of the development of venue at common law, the plaintiff had the prima facie power to designate any county in England as the place for trial.

> The plaintiff's power of determining the venue was abused. The successive attempts to restrict its exercise indicate that then as now there was temptation to choose the most inconvenient place for the defendant whether or not it was convenient for the plaintiff. A statute of Richard II attempted unsuccessfully to curb the growth of fictions and keep the venue local. A statute of Henry IV directed that attorneys be sworn that "they make no suit in a foreign county." Various rules of court called for punishment of attorneys for doing so. There was a brief period in which the defendant was permitted to take issue on allegations of venue. This made for delay. Finally, the practice developed of allowing motions to change the venue originally selected by the plaintiff. A stereotyped motion calculated to

take care of the clearly vexatious cases dates from early in the seventeenth century. It was available where the cause arose exclusively in one county and the plaintiff had designated another. The plaintiff could prevent the change or change the venue back by undertaking to give material evidence arising in the county where he had laid it. If he failed to make good his undertaking he would be nonsuited.

Later we find the common law courts exercising a discretionary power to change the venue for the convenience of witnesses, in situations where the usual stereotyped motion would not apply. A good illustration of the practice is *Holmes v. Wainwright* [3 East 328 (1803)].[1] The defendant obtained a rule nisi to change the venue from London to Yorkshire upon affidavit that all the witnesses lived in Yorkshire. The plaintiff showed that a particular fact arose in London. On the defendant's agreeing to admit this fact the rule was made absolute. Other cases emphasize the large discretion in the court to condition the granting of the motion on the defendant's abandonment of some of his technical legal rights; to require an undertaking to give judgment as of a particular term [*Foster v. Taylor*, 1 T.R. 781 (1787)]; to require a precise showing of the number of witnesses and the nature of the defense [*Evans v. Weaver*, 1 Bos. & P. 20 (1797)]; to require the defendant in an action on a bond to withdraw his plea of the general issue and go to trial on another plea characterized as on the merits [*Fenwick v. Farrow*, 1 Chit. 334 (1819)]. The defendant had the burden of overcoming the inertia of the court, and where his witnesses lived in one county and plaintiff's in another, so that convenience was equally balanced, the plaintiff's convenience would prevail [*Flecke v. Godfrey*, cited in *Foster v. Taylor*, 1 T.R. 781, 782n.(a) (1787)].

Roger S. Foster, *Place of Trial--Interstate Application of Intrastate Methods of Adjustment*, 44 Harv.L.Rev. 41, 43-45 (1930).

¶18. The development of venue at common law does lend support to the theory that venue can be changed for the sake of convenience. However, the historical development of venue in Mississippi demonstrates that the legislature has rejected that portion of venue as it existed at common law. Pronouncements by this Court concerning both the common law and venue support this view.

¶19. The territorial government of Mississippi was established by an act passed in 1798. In 1817, the United States Congress authorized the State Government of Mississippi. "When the Mississippi territory was organized, the ordinance secured the inhabitants in the enjoyment of judicial proceedings, according to the course of common law. Toulmin, Dig. 473; Laws U.S. Vol. 1, 475. This, together with the provision in the constitution of 1817, schedule § 5, has been considered to exclude all English statutes, and to adopt only the common law, and the statutes of our own government, for the determination of the rights of the citizen."*Boarman v. Catlett*, 21 Miss. 149, 152 (1849).

To the extent that statutes, by their terms and necessary implications, and the common law are not repugnant, they co-exist and will be given effect. The presumption is that the legislature does not intend to make alterations in the law beyond what it explicitly declares, either by express terms or by necessary implication, and does not intend to overthrow fundamental principles or to infringe existing rights, without expressing or clearly implying such intention. . . . And, the rule is stated in 59 C.J. 1040, that: "Statutes are not to be understood as affecting any change in the common law beyond that which is clearly indicated, either by express terms or by necessary implication from the language used...."

*Sanders v. Neely*, 197 Miss. 66, 82, 19 So. 2d 424, 426-27 (1944).

¶20. The common law of Mississippi is "different in material respects from that which existed in England, and which exists in many other states of the Union. For instance, the common law of Mississippi does not include the statutes of England in existence at the time of the Revolution, but was adopted independently of such statutes, as the law of this state." *City of Jackson v. McFadden*, 181 Miss. 1, 14, 177 So. 755, 758 (1937). This Court has stated that "The supreme court has the authority to declare for itself what the common law of this state is. The common law is the perfection of reason, and, when a rule of the common law ceases to be reasonable and just, it is no longer the common law. Those principles of the common law which are unsuited to our conditions, or repugnant to the spirit of our institutions, are not in force in this state. Only such rules of the common law as are adapted to our institutions and circumstances and not repealed by the Legislature or varied by usage are in force." *Planters' Oil Mill v. Yazoo & M.V.R. Co.*, 153 Miss. 712, 717, 121 So. 138, 140 (1929) (citations omitted).

¶21. In *Noonan v. State*, 9 Miss. 562, 573 (1844), the Court had this to say about the common law:

> It is said that at the adoption of our constitution, there was included the common law, as a part of the law of the land, and that it would now be an unconstitutional act to alter or repeal by legislature, any principle, rule, or law, that was then a part of the common law. That, indeed, what was the common law at that juncture, was in fact incorporated into our constitution, and consequently not subject to any power short of that of the people themselves, in the exercise of their inherent political power, to alter or abolish their form of government. This view of the subject does not meet the approbation of this court, nor does it for the purpose intended, require its elaborate examination. The language of the constitution rebuts the presumption of such a meaning or intention. That the common law, like the common atmosphere around every living being, is gladly received by all framers of government, is certainly very true, but that it was adopted to remain perpetual, unaltered, and unalterable, and not to be tempered to our habits, wants and customs, we conceive was never designed by the wisdom of those who established our fundamental law. . . . The common law was the product of the experience of time, and the necessities of men living under a form of government. Many of its rules are now vexatious, and have become unnecessary, and unfitted to our occasions, and are properly repealed when they are found to obstruct the current of justice or the interests of the whole people.

¶22. The first statute dealing with venue was contained in the 1807 Statutes of the Mississippi Territory. This statute provided that all civil cases shall be commenced in the circuit court of the county in which the defendant may be found or if a real action, action of ejectment, or trespass quare clausum fregit, then in the county where the cause of action arose. In addition, no free-holder of the territory could be sued out of the county of his permanent residence unless it be one of the actions for which the statute made an exception. The venue statute found in Hutchinson's Code of 1848, one of the first codes following statehood, contains almost the identical language as that of the 1807 statute.

¶23. For comparison purposes with the English system, it is important to note that under Mississippi law as enacted both before and after statehood, the plaintiff had no power over the determination of venue. The venue statute was exclusive in that it allowed the action to be brought only where the defendant could be found or, in the case of a free-holder, in the county of the free-holder's permanent residence.[2] By contrast, under the English system, the plaintiff had the prima facie power to designate any county in England as the place for trial. It was because this power was abused by plaintiffs that the practice developed of allowing motions for change of venue by the defendant. While the plaintiff in Mississippi today has more power over

the determination of venue, even under existing law, the plaintiff's choice is not unlimited.

¶24. With regard to venue, this Court has applied the common law in a couple of cases when the venue statutes were silent as to the defendant involved. In ***Board of Mississippi Levee Commissioners v. Kellner***, 189 Miss. 232, 251, 196 So. 779, 786 (1940), the Court held that in the absence of a statute prescribing the place of venue for suing a public corporation, the common law would prevail. And in the case of ***City of Jackson v. Wallace***, 189 Miss. 252, 258, 196 So. 223, 224 (1940), the Court held that the common law will prevail where the statutes are silent as to the venue of a suit against a municipal corporation. "The common law has been followed in this state, and so far as our reports disclose no municipality has been sued outside the county of its domicile. Since the filing of this suit the legislature has enacted a statute reannouncing the common law rule, showing it to be the legislative purpose for municipalities to be sued in the counties in which they are located." ***Id.*** at 261, 196 So. at 225. "What was said in Oliver v. Loye, 59 Miss. 320, and in Archibald v. M. & T. R. Co., 66 Miss. 424, 6 So. 238, is properly applied to the case then before the Court, and must be limited to the case which the Court was called upon to decide. . . . The parties in each of the cases mentioned were private parties, and the statute prescribed the venue in such actions; and the venue, of course, was controlled by the statute." ***Id.*** at 260-61, 196 So. at 225.

¶25. This Court has said that "[v]enue is a function of statute." ***Flight Line, Inc. v. Tanksley***, 608 So. 2d 1149, 1155 (Miss. 1992).

> A state has the right to fix venue of actions according to its conception of what is necessary to best administer justice in its courts. It is not necessary for it to fix the venue of an action in one particular place. It cannot unreasonably discriminate between classes of defendants, but, having reference to reasonable conditions, it may fix the venue of actions according to its judgment of convenience, justice, etc. The state is the judge so long as it does not unreasonably discriminate between litigants or classes of litigants.

***Clark v. Louisville & N. R. Co.,*** 158 Miss. 287, 304, 130 So. 302, 307 (1930).

¶26. We have also stated that venue is about convenience. "The legislative prescription implies a legislative finding counties meeting certain criteria will generally be more convenient to the parties." ***Flight Line, Inc. v. Tanksley***, 608 So. 2d 1149, 1157 (Miss. 1992). For instance, "according to our statutes, when a debtor is sued in an ordinary action, not local or otherwise provided for, his convenience is consulted as to where the suit shall be brought and conducted, but when he subjects himself to the extraordinary remedy by attachment, the rights of the creditor are placed above the convenience of the debtor." ***J.F. Baum & Co. v. Burns***, 66 Miss. 124, 128, 5 So. 697, 698 (1889).

¶27. The choice of venue under the general statute of venue belongs to the plaintiff.

> ". . . [H]is choice must be sustained . . . unless in the end there is no credible evidence supporting the factual basis for the claim of venue. . . . Put otherwise, the court at trial must give the plaintiff the benefit of the reasonable doubt, and we do so on appeal as well." ***Flight Line***, 608 So. 2d at 1155. . . . In promulgating our Mississippi Rules of Appellate Procedure, this Court further has yielded to the legislature's prerogative in matters of venue, allowing it to create a level playing field for both plaintiffs and defendants without encouraging forum shopping.

*McMillan v. Puckett*, 678 So. 2d 652, 656 (Miss. 1996). Furthermore, Rule 82(b) of the Mississippi Rules of Civil Procedure explicitly states, "Except as provided by this rule, venue of all actions shall be as provided by statute."

## IV.

## CONCLUSION

¶28. Our research on the doctrine of forum non conveniens, the common law, and the development of venue conclusively establishes the following:

> 1) The history of the doctrine of forum non conveniens reveals no support for intrastate forum non conveniens.

> 2) Venue is a function of statute, and reference to common law can only be had where the venue statutes are silent.

> 3) By enacting a general venue statute which limited venue to the residence of the defendant or the place where the defendant could be found, the legislature effectively repealed the common law with regard to changing venue for the sake of convenience.

> 4) Venue is a matter of convenience, and the legislative directive with regard to convenience in this state is that counties meeting certain criteria will generally be more convenient to the parties.

> 5) The issue is one of legislative prerogative, and the Court today does not invade that prerogative.

¶29. To the extent that any of our previous decisions indicated that the doctrine of intrastate forum non conveniens would apply in this state, they are hereby overruled. Giving respect to the plaintiff's choice of forum, we hold the doctrine of forum non conveniens to be inapplicable when the trial court is faced with a choice of venue between two Mississippi counties. As a result, this case must be reversed and remanded to the Hinds County Circuit Court for further proceedings consistent with this opinion.

¶30. **REVERSED AND REMANDED.**

**PITTMAN, P.J., BANKS, McRAE AND ROBERTS, JJ., CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., MILLS AND WALLER, JJ.**

**McRAE, JUSTICE, SPECIALLY CONCURRING:**

¶31. I write separately to address the fallacies inherent in Justice Smith's dissenting opinion, but concur wholeheartedly with the majority opinion. This Court has never embraced the doctrine of forum non conveniens on an intrastate basis nor does anything in the doctrine's origins in the English common law suggest that it was ever so intended. Moreover, if the doctrine's rich historical antecedents are not sufficient to undergird the majority opinion, surely the realities of modern technology and transportation are. Finally,

adoption of intrastate forum non conveniens would serve only to provide parties with still another dilatory tactic to employ.

I.

¶32. Mississippi has never recognized the doctrine of intrastate forum non conveniens. The dissent relies on *Illinois Central Gulf R.R. v. Stedman*, 344 So. 2d 468 (Miss. 1977), wherein this Court stated:

> Appellants also urge that the trial court was in error in failing to sustain their motion to dismiss this cause under the doctrine of the forum non conveniens, or in the alternative grant a change of venue. The trial court after hearing testimony on the motion overruled it, although none of the parties or witnesses were residents of Smith County. Although we cannot say that the trial court abused its discretion in this regard, however, on remand the trial court should again consider the motion in light of the testimony given and the circumstances now existing, and if it finds that it is proper to do so, transfer the cause to a more convenient forum.

*Stedman*, 344 So. 2d at 471.

¶33. The Court in *Stedman* stated that the suit was filed pursuant to Miss. Code Ann. §11-11-5 (1972), which at that time, provided that venue was proper for any suit against a railroad or any other mode of public transportation or public utility wherever its lines or routes may cross. No such statute governs in the case *sub judice*.[3] The *Stedman* Court stated that none of the parties were residents of Smith County, Mississippi, where the action was brought. Illinois Central, in fact, was not even a "resident" of this State. *See Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149 (Miss. 1992). Thus, it was held that the trial court did not abuse its discretion in refusing to transfer venue. Under the facts of *Stedman*, venue was improper under §11-11-5. The Court thus held that the trial court should reconsider its decision not to transfer the case pursuant to Miss. Code Ann. §11-11-17 which allows a court, in an action over which it has subject matter jurisdiction, but venue is not proper, to transfer the action to the proper court[4].

II.

¶34. The historical antecedents of the doctrine of forum non conveniens likewise do not appear to contemplate its application on an intrastate basis; rather the focus is on the exigencies of trying cases where the parties are residents of different countries or where the cause of action arose in a jurisdiction foreign to the injured parties' domicile. Furthermore, it is clear that the doctrine intended to form the basis for the dismissal of an action, which ultimately could be refiled elsewhere, and not its mere transfer from one forum to another.[5]

¶35. As recognized by the United States Supreme Court, "[a]lthough the origins of the doctrine [of forum non conveniens] in Anglo-American law are murky, most authorities agree that forum non conveniens had its earliest expression . . . in Scottish estate cases." *American Dredging Co. v. Miller*, 510 U.S. 443, 449 (1994). The first Scottish cases dealt with the plea of "forum non competens." The plea, which normally was directed to a lack of jurisdiction, "was sustained in cases where the jurisdiction seemed clear but the parties were nonresidents and trial in Scotland would have been inconvenient." Edward L. Barrett, Jr., *The Doctrine of Forum Non Conveniens*, 35 Cal.L.Rev. 380, 387 n. 35 (1947)(*citing Vernor v. Elvies,* 6 Dict. of Dec. 4788 (1610); *Col. Brog's Heir,* 6 Dict. of Dec. 4816 (1639); *Anderson v. Hodgson,* 6 Dict. of Dec. 4779(1747)).

¶36. By 1845, Scottish cases discussed the question in terms of one "on the merits" rather than jurisdiction, and the words "inconvenient forum" began to be used. The Latin term "forum non conveniens" was used by Scottish judges for the first time in the latter part of the nineteenth century. Robert Braucher, *The Inconvenient Federal Forum*, 60 Harv.L.Rev. 908, 909 (1947). "Forum non conveniens" was used by the courts instead of "forum non competens" when the court's jurisdiction was clear and "only a question of discretion was involved." Barrett, 35 Cal.L.Rev. at 387 n. 35 (*citing* **Brown v. Cartwright,** 20 Scot.L.R. 818 (1883); **Williamson v. North-Eastern Ry. Co.,** 21 Scot.L.R. 421(1884)).

¶37. **Logan v. Bank of Scotland**, 1 K.B. 141 (C.A. 1905) is the leading English case on the subject. In that case, the plaintiff, a domiciled Scotsman, brought an action against the defendant bank, a Scottish corporation with head offices in Edinburgh. The transactions which gave rise to the cause of action took place in Scotland. All the parties involved in the action resided in Scotland with the exception of one of the defendants. The bank had one branch outside Scotland, and it was located in London. The writ of summons in the action was served on the bank in London. The defendants moved to have the action in England stayed on the ground that the action was vexatious and oppressive.

¶38. The English court granted the stay. In so doing, the court cited three cases dealing with forum non conveniens, a New York case, **Collard v. Beach**, 81 N.Y.S. 619 (1903) (declining jurisdiction of tort action occurring in another jurisdiction between nonresidents), and the Scottish cases of **Longworth v. Hope**, 3 M. 1049 (1865)(dismissing the plea in a libel action between Englishmen because the libel was published in Scotland), and **Williamson v. North Eastern Ry. Co.**, 11 R. 596 (1884)(sustaining a plea of forum non conveniens where a Scottish resident sued a company located in England for negligence in a death occurring in England). The court noted that the cases "seem to carry the law further in those countries than can be found in any reported case in this country." **Logan**, 1 K.B. at 148. While noting that the court should stay proceedings on the ground of vexation only with great care, the court held

> Now, it is true that the Courts of this country have not gone so far as to express themselves upon the question of convenience in terms similar to those used in the Scotch cases, though, as I have already noticed, it may be doubted whether there is any substantial difference between the two. Yet it seems to me clear that the inconvenience of trying a case in a particular tribunal may be such as practically to work a serious injustice upon a defendant and be vexatious. This would probably not be so if the difference of trying in one country rather than in another were merely measured by some extra expense; but where the difficulty for the defendant of trying in the country in which the action is brought is such that it is impracticable to properly try the case by reason of the difficulty of procuring the attendance of busy men as witnesses, and keeping them during a long trial, and of having to deal with masses of books, documents, and papers which are not in the country where the action is brought, and of dealing with law foreign to the tribunal, it appears to me that a case of vexation in some circumstances may be made out if the plaintiff chooses to sue in that country rather than in that where everybody is and where all the witnesses and material for the trial are.

*Id.* at 151-52. The court further noted that if the one defendant who was an English resident were a real defendant rather than a nominal defendant and it had been necessary to bring an action to join him and the bank in England, then the defendant bank might have had to submit to the action brought in England. *Id.* at 153.

¶39. In the United States, the doctrine of forum non conveniens appeared in the 1800s in the jurisprudence

of a few state courts although the phrase "forum non conveniens" was not used. These cases involved suits between aliens on foreign causes of action or parties who were residents of different states. Barrett, 35 Cal.L.Rev. at 387 n. 36. Following a 1929 law review article whose author contended that "all American courts had inherent power to decline jurisdiction under the doctrine" of forum non conveniens, the term "forum non conveniens" began to be used by courts. *Id.* at 388 (citing Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Colum.L.Rev. 1 (1929)). The doctrine originated in state courts, not in federal court. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 505 n. 4 (1947); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 n. 13 (1981) ("The doctrine . . . originated in Scotland . . . and became part of the common law of many States . . ."). By 1947, the doctrine had gained acceptance in barely half a dozen states. Barrett, 35 Cal.L.Rev. at 388-89.

¶40. In 1947, the United States Supreme Court rendered two decisions which settled the question of the power of the federal courts to apply forum non conveniens. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the Court recognized that a federal court has the discretion to dismiss a case even when it has jurisdiction if the plaintiff has a choice of courts and the convenience of witnesses and the ends of justice would be better served by another forum. To that end, the Court prescribed a number of factors to be used in determining if the case should be dismissed. The Court also approved the dismissal of a case by applying forum non conveniens in *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518 (1947).

¶41. The following year, Congress enacted section 1404(a) of Title 28 of the United States Code. The section allows a district court to transfer a civil action to another district court for the convenience of parties and witnesses and in the interest of justice. In *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955), the Supreme Court discussed the difference between the doctrine of forum non conveniens as it existed prior to enactment of section 1404(a) and after enactment.

> As Judge Goodrich, speaking for the court, appropriately pointed out,

> "The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Section 1404(a) avoids this latter danger. Its words should be considered for what they say, not with preconceived limitations derived from the forum non conveniens doctrine."

> Judge Maris, who was Chairman of the Judicial Conference Committee on the revision of the Code and approved the text submitted to Congress, sat on the Court of Appeals en banc when *All States Freight* was decided. And Judge Parker of the Fourth Circuit, consultant to the Advisory Committee, writing for the court in *Jiffy Lubricator Co., Inc. v. Stewart-Warner Corp.*, 177 F.2d 360, 362, also construed the statute as we understand it:

> ". . . A dismissal in application of that [forum non conveniens] or any other principle puts an end to the action and hence is final and appealable. An order transferring it to another district court does not end but preserves it as against the running of the statute of limitations and for all other purposes. The notion that 28 U.S.C.A. § 1404(a) was a mere codification of existing law relating to forum non conveniens is erroneous. It is perfectly clear that the purpose of this section of the Revised Judicial

Code was to grant broadly the power to transfer for the convenience of parties and witnesses, in the interest of justice, whether dismissal under the doctrine of forum non conveniens would have been appropriate or not."

*See also* Moore, Commentary on the Judicial Code (1949 ed.), p. 208.

When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. As this Court said in Ex parte Collett, 337 U.S. 55-61, Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. When the harshest part of the doctrine is excised by it can hardly be called mere codification. As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

*Norwood,* 349 U.S. at 31-32. By virtue of the enactment of section 1404(a), the doctrine of forum non conveniens in federal cases has continuing application only where the alternative forum is abroad. *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n. 2 (1994).

## III.

¶42. Modern advancements in technology and transportation have rendered the notion of intrastate forum non conveniens obsolete. As the New Mexico Supreme Court explained in *First Financial Trust Co. v. Scott*, 929 P.2d 263 (N.M. 1996):

The advent of the information age, with cellular phones, fax machines, jet travel, video taped depositions, and interstate highways, has "significantly altered the meaning of 'non conveniens.'" *Calavo Growers v. Generali Belgium*, 632 F.2d 963, 969 (2nd. Cir. 1980). If it is true that the inconvenience of defending an action in another state has decreased due to technology, it must also be true that this inconvenience has virtually disappeared within the territory of an individual state.

The improvement of the highway system, the expansion of scheduled air service, and the spread of new technologies have all but eliminated the obstacles that once hindered the ability of the parties to litigate their cases in different parts of the State. Long-distance communication has become routine. Travel is safe, easy, fast and affordable.

*First Financial*, 929 P.2d at 268 (citations omitted). Especially where, as in the case *sub judice*, we are asked to believe that venue is more convenient in the neighboring county, the doctrine of forum non conveniens is hardly applicable.

## IV.

¶43. In conclusion, it bears note that adoption of intrastate forum non conveniens invites abuse by defendants, serving to delay the interests of justice, especially where there are multiple defendants. Already there are examples of such abuse although the doctrine has not been adopted in this state. A motion to transfer the case pursuant to forum non conveniens is filed alleging that the defendant in the county upon

which venue is based, waives the right to be sued in his domicile and requests that venue be changed to another county. The county to which transfer is requested, is invariably a more favorable venue for the defendants. This benefits the defendants in two ways. If the court grants the motion, the case is transferred to a more favorable venue with the obvious benefits thereof. If the motion is denied, the defendants can attempt to delay the action by filing a petition for interlocutory appeal with the Court, with the benefit of earning additional interest on the money they might otherwise have had to pay to the plaintiff.

¶44. The doctrine of intrastate forum non conveniens is subject, too, to abuse by the plaintiff. Where the legislature requires a lawsuit to be brought in a particular place, the plaintiff may not like the venue and based on some specious reason, seek a transfer from one venue to another. Thus, the potential for abuses by both parties outweighs any advantages the doctrine of intrastate forum non conveniens may serve, especially in light of today's technology.


## SMITH, JUSTICE, DISSENTING:


¶45. The majority, holds that the doctrine of forum non conveniens is inapplicable as between state residents, thus the Hinds County Circuit Court judge erred in relying upon forum non conveniens to transfer this cause of action to Attala County. I disagree and accordingly dissent.

¶46. The doctrine is not solely federal common law, but rather, was first developed in England as a common law doctrine. Mississippi has a long history of adhering to English common law. "The doctrine of forum non conveniens recognizes 'the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere.'" Guthrie T. Abbott, *Venue of Transitory Actions Against Resident Individual Citizens in Mississippi - Statutory Revisions Could Remove Needless Complexity*, 58 Miss. L. J. 1, 12 (1988) (*quoting* Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Colum. L. Rev. 1, 1 (1929)). "The doctrine developed in England as a common law remedy to protect defendants from plaintiffs who chose venue based on the desire to force the defendant to litigate in a distant and inconvenient forum." *Id.* (*citing* Barrett, *The Doctrine of Forum Non Conveniens*, 35 Cal. L. Rev. 380, 386-89 (1947)(doctrine of forum non conveniens is relied upon by English courts to prevent unnecessary hardship on defendant)).

¶47. This Court has applied the principles of the doctrine of forum non conveniens for over fifty years. *Strickland v. Humble Oil & Ref. Co.*, 194 Miss. 194, 11 So. 2d 820 (1943). We have also applied the seven factors established by the United States Supreme Court in *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 527 (1947), which courts must follow in deciding forum non conveniens cases. The Court has upheld the doctrine applying the seven *Koster* factors. *See Missouri Pac. R.R. v. Tircuit*, 554 So. 2d 878 (Miss. 1989)(Robertson, J). Justice Robertson, for the Court, acknowledged the doctrine in *Flight Line, Inc. v. Tanksley,* 608 So. 2d 1149 (Miss. 1992), as stated in footnote 2, "[t]his rule does not preclude later inquiry into transfer via *forum non conveniens." Id.* at 1155 n.2 (citing *Missouri Pac. R.R. v. Tircuit*, 554 So. 2d 878, 881-83 (Miss. 1989)) *See also Shewbrooks v. A.C. & S., Inc.*, 529 So. 2d 557 (Miss. 1988)(Delaware residents' action against eighteen nonresident corporate

defendants for asbestos poisoning which were engaged in business in state and subject to process in state).

¶48. Admittedly, *Strickland*, *Tircuit*, *Flight Line* and *Shewbrooks* all involve *interstate* parties. However, contrary to the majority view, this Court has considered the doctrine where the parties were *intrastate.* In *Illinois Central Gulf Railroad v. Stedman*, 344 So. 2d 468 (Miss. 1977), a case tried in Smith County, Mississippi, none of the parties involved were residents of that county, nor did the cause of action occur or accure in Smith County. This Court, although reversing on other grounds, significantly stated, "[a]lthough we cannot say that the trial court abused its discretion in this regard, however, **on remand the trial court should again consider the motion [for change of venue] in light of the testimony given and the circumstances now existing, and if it finds that it is proper to do so, transfer the cause to a more convenient forum.**"*Id.* at 471 (emphasis added). Such language is compelling that this Court recognized that intrastate forum non conveniens is appropriate if trial judges in their sound discretion elect to utilize the doctrine in certain cases where applicable.

¶49. Also, in ***Board of Trustees of State Institutions of Higher Learning v. Van Slyke***, 510 So. 2d 490 (Miss. 1987)(Prather, J., dissenting), we find this language, "[t]his interpretation, however, does not preclude the Board's application for, nor a trial court's granting, a change of venue to a forum of convenience. Consideration of record transfer, convenience to witnesses, parties, attorneys and staff, and community resources for lodging are pertinent to the determination of venue under M.R.C.P. Rule 82(d)." *Id.* at 495. It is more than noteworthy that the factors mentioned by Justice Prather are also found among the seven factors mentioned by the Supreme Court in ***Gulf Oil Corp. v. Gilbert***, 330 U.S. 501 (1947), and by Justice Robertson in ***Tircuit.*** As in ***Stedman***, all parties in ***Van Slyke*** were Mississippi residents and the question of venue was between Hinds or Forrest counties.

¶50. The comments found in ***Stedman*** and ***Van Slyke,*** combined with the declaration in ***Missouri Pac. R.R.*** that **all plaintiffs** bringing suits in the courts of Mississippi are subject to the possible application of the doctrine of forum non conveniens, provide this Court with a persuasive argument that the trial judges in this state may apply the doctrine of intrastate forum non conveniens in those rare cases where the circumstances of the particular litigation and the ends of justice are overwhelmingly better served by transferring venue to a more convenient forum. Accordingly, a compelling argument is thus made that application of intrastate *forum non conveniens* is recognized in this state and appropriate for use by the trial judges in their sound discretion in certain cases where the ends of justice are better served by transferring venue.

¶51. Other jurisdictions have recognized that the doctrine of forum non conveniens, both *interstate* and *intrastate,* allows our lower courts to better serve the interests of the judicial system, and consider other factors such as the parties, witnesses, costs, the county's relationship to the action at the time of the motion, and allowing localized controversies to be decided at home. ***Degraw v. Flowers Transp., Inc.,*** 521 N.E.2d 115, 118 (Ill. App.Ct. 1988) (abuse of discretion to deny transfer of venue based on forum non conveniens when forum county has no relevant connection with litigation), *appeal denied*, 526 N.E.2d 828 (Ill. 1988); ***Torres v. Walsh,*** 456 N.E.2d 601, 608 (Ill. 1983) (courts exercise discretion in interest of fair play); ***Vick v. State***, 356 So. 2d 523, 524 (La. Ct. App. 1977) (change of venue allowed under doctrine of forum non conveniens); ***McReynolds v. Benner Township,*** 544 A.2d 566, 567 (Pa.Commw.Ct.1988) (plaintiff's right of forum choice not absolute in light of public interest in judicial economy); ***Smith v. Atlantic Coast Line R.R.,*** 63 S.E. 2d 311, 313 (S.C. 1951) (change of venue granted when no witnesses resided in forum county); Abbott, *supra*, at 15 n.59, 19 n.77; Note, ***Forum***

*Non Conveniens - Illinois Judges Granted Authority to Curb Intrastate Forum Shopping*, 1983 S. Ill. U.L.J. 395, 410-12 (discussion of perceived good and bad factors pertaining to adoption of intrastate forum non conveniens).

¶52. In the case at bar the trial court was eminently correct in transferring the cause to Attala County. The record is replete with more than sufficient factors which support the sound discretion of the trial court's action. Henry Clark, the plaintiff is a resident of Attala County. Clark was an "at-will" employee of Luvel Dairy Products, Inc., a Mississippi corporation whose principal place of business is located in Attala County. Clark was accused of stealing dairy products from Luvel's business premises in Attala County. Thus, all of the accusations and supposed actions of James Briscoe, president of Luvel were made against Clark at the corporate offices in Attala County. Accordingly, the cause of action occurred or accrued in Attala County. Six primary fact witnesses with supposed immediate knowledge concerning Clark's theft of dairy products from Luvel are all residents of Attala County. At least fifteen non-party fact witnesses reside in Attala County, or nearby in adjacent counties. Clark filed suit in Hinds County where Briscoe resided at that time. Briscoe resided in Madison County at the time the trial court heard the motion to change venue. Briscoe, by filing his motion for change of venue, was apparently willing to forfeit his right as a defendant to be tried in his county of residence. Such action by Briscoe is not so unusual given the fact that he is president of Luvel and has also been sued individually. After the trial court ruled against Clark, on motion for reconsideration, Clark alternatively asked that the court transfer the case to Madison County. Again, the trial court applying the doctrine of forum non conveniens, considering the *Tircuit* factors, determined that Attala County was the best forum for this case to be tried by a jury.

¶53. Upon examination of the record and applying the *Tircuit* factors, it is clear that the sources of proof lie in Attal a County, rather than Hinds County. The ease of access in Attala County is readily apparent. Judicial economy and service to the litigants and public is the intent of the judicial system, and this factor clearly favors Attala County. The potential cost of securing witnesses, etc. for trial in Hinds County would indeed be burdensome to all parties as compared to Attala County. The administrative difficulties and unnecessary expense over and above that normally to be expected constitute an unreasonable burden to place on Hinds County. To allow Clark to maintain suit in Hinds County, given all the facts, would present the citizens of Hinds County who would be called on to serve as jurors and that county's court system with the undue burden and expense of hosting the trial of a controversy in which they have absolutely no stake. The burden upon some fifteen non-party witnesses from the Attala County area being required to attend what is certain to be in excess of a one day trial in Hinds County, clearly favors venue in Attala County. Hinds County had no relationship whatsoever to the action at the time the motion was heard and considered. Clearly, this case was a localized controversy which is best heard in the local community, i.e., Attala County. Clark is an Attala County resident, whose choice of Hinds County as a forum was based solely on the lone factor that Briscoe resided in Hinds County when suit was filed makes his choice of forum less compelling. This lone factor pales by comparison to all others which clearly favor the defendant's motion to transfer venue to Attala County. This Court has stated, "[w]e are certainly willing to accord Plaintiffs the prerogative of deciding what is and is not convenient to them, a point expressed in our policy that a plaintiff's choice of a forum ordinarily should not be disturbed absent strong countervailing considerations. We have just listed six strong countervailing considerations."*Tircuit*, 554 So. 2d at 883.

¶54. In the case at bar we too have just listed numerous strong countervailing considerations to offset Clark's lone reason for Hinds County as the forum for this litigation. This case is extraordinary and Clark's choice of venue in Hinds County is much less compelling considering all of the strong countervailing factors

which favor the defendant's motion to transfer venue to Attala County. Simply put, Attala County is clearly the better venue for this particular case to be tried. The learned trial judge should be affirmed.

¶55. I respectfully dissent.

**PRATHER, C.J., MILLS AND WALLER, JJ., JOIN THIS OPINION.**

1. This is the case on which the Illinois Supreme Court based its finding in ***Torres v. Walsh***, 456 N.E.2d 601 (Ill. 1983) that the doctrine of forum non conveniens existed at common law. Not only does the case have nothing to do with forum non conveniens, but the only reason the English court granted the change of venue in this case was that the defendant was willing to admit the only fact upon which the plaintiff based venue in London. Otherwise, the court said, "[W]e should not interfere with the acknowledged general right of the plaintiff to try his cause where any part of the cause of action arose." ***Holmes***, 3 East. at 330.

2. Although we have rejected the concept of intrastate forum non conveniens, it is interesting to note that intrastate forum non conveniens would not have been available under this statute because the doctrine of forum non conveniens presupposes the existence of two or more available forums.

3. Subsequent to ***Stedman***, because of the plethora of cases brought in Smith County, the statute was changed in 1979, limiting venue to the county in which the plaintiff resides, the county in which the defendant has its principal place of business, or in which the cause of action accrued.

4. ***Stedman*** was a pre-rules case. Transfer of venue is now provided for in Miss.R.Civ.P. 82(d), which is substantially similar to Miss. Code Ann. § 11-11-17.

5. The separate and distinct notion of change of venue in English common law arose from the fact-finding function of the jury and the desire to keep trials local. It ultimately evolved into the courts' discretionary power to change venue for the convenience of witnesses. *See e.g.* ***Holmes v. Wainwright***, 3 East 328 (1803).